# THE UNITED STATES ELECTRIC. LIGHTING COMPANY

*v.*

# THE METROPOLITAN CLUB OF THE CITY OF WASHINGTON.

APPEALABLE ORDERS ; TEMPORARY RESTRAINING ORDERS.

1. Under the act of Congress of February 9, 1893, allowing appeals to this court from interlocutory orders whereby the possession of *property* is changed or affected, an appeal lies from an order continuing until final hearing a restraining order enjoining an electric lighting company from cutting off an electric current from complainant's premises.
2. An order may be said to affect the possession of property within the meaning of that act which limits or restricts the use of property in a manner and to an extent to which it would not have been limited or restricted were it not for the order.
3. In such a case, where the electric lighting company threatened to cut off an electric current from complainant's premises in violation of a written contract which had been in force seven years, upon the grounds that it was invalid, or if valid was not one which equity would specifically enforce ; that no irreparable injury would accrue to complainant from defendant's failure or refusal to perform the contract, and that complainant had ample remedy at law, it was *held*, affirming the order of the court below continuing the restraining order, that a sufficient *prima facie* case had been made out by complainant and the order was a proper one to save the rights of all parties until final hearing.

No. 478. Submitted June 4, 1895. Decided June 17, 1895.

HEARING on an appeal by the defendant from an order continuing a restraining order *pendente lite* in a suit for the specific enforcement of a contract and for an injunction. *Affirmed.*

The COURT in its opinion stated the case as follows :

This is an appeal from an interlocutory order of the Supreme Court of the District of Columbia, rendered in an equity suit pending in that court, whereby a restraining or-

der, issued *ex parte* in the first instance, was continued to the final hearing of the cause.

A bill of complaint was filed on April 22, 1895, by the appellee as complainant in the court below, in which it was sought to enjoin the appellant, which was the defendant in that court, from cutting off, as it had threatened to do, the electric current which the appellant had been supplying to the appellee for several years for illuminating purposes, in pursuance of a contract between them. It was stated in the bill that both the complainant and the defendant were corporate organizations, the former under the laws of the District of Columbia, for social purposes, the latter by virtue of the laws of the State of West Virginia, but located and doing business in the District of Columbia, which business consisted in the furnishing of illumination by electric power throughout the city of Washington. On January 16, 1888, the two organizations entered into a contract with each other, which was reduced to writing and is in the following terms :

" This contract entered into this 16th day of January, A. D. 1888, between the Metropolitan Club of the city o Washington, a corporation organized and existing under the laws of the District of Columbia and located in the city of Washington in said District, of the first part, and the United States Electric Lighting Company, a corporation existing under the laws of the State of West Virginia, and located and doing business in the city of Washington, District of Columbia, of the second part, witnesseth :

" That the said United States Electric Lighting Company agrees to furnish the building now occupied by said Metropolitan Club, situated on the southwest corner of 17th and H streets, N. W., in the city of Washington, with electric current in quantity and quality sufficient to light the building with sixteen (16) candle-power incandescent electric lights in number not exceeding two hundred (200) at an annual charge of one thousand five hundred and twenty-one dollars and fifteen cents ($1,521.15)—the same being

ten (10) per cent. more than the amount paid for gas by the said Metropolitan Club for the twelve months of the year 1887, said amount so paid by the said Metropolitan Club for the year 1887 being thirteen hundred and eighty-two dollars and eighty-six cents ($1,382.86).

"It is further agreed by and between the parties hereto that the annual charge hereinbefore agreed upon shall be paid to the said United States Electric Lighting Company by the said Metropolitan Club in equal monthly payments, said payments to be made upon the first day of each month next succeeding the month for which payment is made.

"It is further stipulated and agreed that the wiring of said club building for the purpose of introducing said lights shall be done under the supervision of the said United States Electric Lighting Company and that before the electric current is supplied to said building as hereinbefore provided the said company shall signify in writing to the said Metropolitan Club that said wiring is complete and acceptable to said company.

"It is further agreed by the said company that the said current shall be perpetual, and that the renewal of lamps and the repairs to conductors shall be at the expense of the said company, provided that the expense of renewing said (such) lamps as may be broken by servants or members of the said club shall not be charged to the said company.

"It is also agreed by the said United States Electric Lighting Company, that in case the electric current should be cut off or fail from causes not chargeable to the said Metropolitan Club, the expense of gas or other illuminant employed by said club to make good the lack of electric light shall be borne by the said company and may be deducted from the hereinbefore provided for amount of the annual charge to be paid to said company.

"It is also agreed by the said United States Electric Lighting Company that should the said Metropolitan Club

hereafter introduce into its building or any additions thereto on its grounds more incandescent electric lamps than the two hundred hereinbefore named, the said company will furnish electric current in quantity and quality sufficient to supply the said lamps, at a *pro rata* increased charge—it being understood that all charge shall be based upon the sixteen (16) candle power lamp as a standard.

" It is understood and agreed that this contract shall continue in force until terminated by the said Metropolitan Club, provided that the said club shall not terminate the same for at least one year from the date of execution hereof.

" It is also stipulated and agreed by the said United States Electric Lighting Company, that in event of its failure or inability to comply with the terms of this contract and of the annulment or termination for this cause of said contract by the said Metropolitan Club, the said company will reimburse the club for the expenses incurred by the said club in wiring and providing electric light appliances and fixtures for the club building.

" In testimony whereof the parties hereto have hereunto set their hands and seals the year and day above written.

(Signed),   " UNITED STATES ELECTRIC LIGHTING CO.,
  (Seal of Co.)           " By SAM'L NORMENT,
                              " *President.*

(Signed),   " THE METROPOLITAN CLUB OF THE
              CITY OF WASHINGTON,
  (Corporate Seal).        " By JOHN A. BAKER,
      " *Chairman of the Executive Committee.*"

The bill of complaint proceeds to state that under this contract the electric lighting company supplied the necessary electric current to the club for more than seven years; that, in consequence of the system of business in the management of the club's financial affairs, the monthly payments, into which the annual charges were divided, were not paid punctually on the first day of each month, as pro-

vided by the contract, but that such payment had never been exacted by the company, which received the payments without question whenever made ; and that all the monthly payments had in fact been made, except those for February and March of 1895, which, although tendered on April 16, 1895, the electric lighting company refused to receive, upon the ground that by the failure to pay promptly the contract had been forfeited.

The bill further proceeds to state that the electric lighting company now threatens to cut off the electric current from the premises of the club and refuses any longer to supply those premises, unless the club consents to enter into some new contract more advantageous to the company. And it is alleged that, in view of the fact that the club has been at great expense in wiring its building and introducing therein the necessary appliances for lighting it with electricity, and of the further fact that only by electricity can the building be properly illuminated, and only from the company, which has a monopoly of the business, as it is claimed, can the necessary lighting power be procured, irreparable injury would accrue to the club, if the electric current were cut off.

And the prayer of the bill is, that the contract set forth should be decreed to be a valid subsisting contract, and to be specifically performed, and for an injunction to restrain the company from cutting off the electric current and from interfering in any way with the free and proper use of the current by the club.

Upon the filing of the bill, a temporary restraining order was issued at the instance of the complainant ; and on the same day an order was passed allowing the complainant to pay into the registry of the court the money in arrears from the complainant for the months of February and March, 1895, with interest thereon to that day, which payment was accordingly made on the same day.

Seven days afterwards, on April 29, 1895, the electric lighting company filed its answer, with some supporting

affidavits and exhibits. The substantial averments of the answer, so far as the present hearing is concerned, are that the company has not a monopoly of the business of supplying electric light in the city of Washington; that many persons produce their own electricity for lighting purposes; that the complainant could do so, or could use gas or some other means of illumination; that no irreparable injury would inure to the complainant if the defendant cut off the electric current, as threatened; that the contract in question must have been procured by some misrepresentation— for of the circumstances of the making of the contract the present officers of the company, who are different from those in office at the time of its execution, are stated to have no knowledge; that the contract was never duly executed by the proper officers of the club; that it is a harsh, unjust, nnconscionable and one-sided contract, wanting in mutuality, inasmuch as by it the defendant was perpetually bound, while the complainant might terminate it at any time after the expiration of one year; that in consequence of it the defendant had been furnishing electric current to the complainant for several years at a cost and loss to the defendant of about three thousand dollars each year; that the complainant was improperly and extravagantly using the electric current in a manner and to an extent not contemplated at the time at which the contract was made; that the defendant had repeatedly protested against this, to it, unsatisfactory condition of affairs, and requested the complainant to come into some more just and reasonable arrangement; that the defendant had never waived its right to prompt payment under the contract; and that it had notified the complainant in consequence of the default of the latter, that it would be compelled to cut off the electric current unless the complainant would enter into a new contract with reference to the same.

Some correspondence between the parties or their attorneys is given in the exhibits filed with the answer; and the affidavits are to the effect that various hotels and places of

business in the city of Washington were lighted with electricity not supplied by the defendant, but generated by the owners or managers of such houses and places of business.

Upon the application of the complainant, and the consideration of the bill, answer and affidavits, the court below, on April 29, 1895, made an order continuing the restraining order until the final hearing of the cause; and from this order of April 29, 1895, the present appeal has been taken by the defendant, the electric lighting company.

*Mr. Henry Wise Garnett* and *Mr. James K. Redington* for the appellant.

*Mr. Calderon Carlisle* and *Mr. Wm. G. Johnson* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

1. A preliminary objection is made by the appellee that no appeal lies in this case, and that the appeal, therefore, should be dismissed for want of jurisdiction. The argument is that the order appealed from does not change or affect property, and consequently is not comprised in the category of orders from which appeals may be taken under the seventh section of the act of Congress that created this court. That section provides that "appeals shall also be allowed to said Court of Appeals from all interlocutory orders of the Supreme Court of the District of Columbia, or by any justice thereof, whereby the possession of property is changed or affected, such as orders for the appointment of receivers, granting injunctions, dissolving writs of attachment, and the like." And it is urged that the present case is not within the provision, unless we hold, what it is urged is not the proper construction of the statute, that appeals may be taken in all cases where injunctions are allowed.

Assuming, according to the argument for the appellee, that the order for injunction from which an appeal may be

taken must be an order changing or affecting the title to property, we are of opinion that the order in the present case is of that character.

It is not contended that the order, although purporting to be merely the continuance of a restraining order, is not in effect an order granting an injunction ; and it could not well be so contended ; for the continuance of the restraining order is until the final hearing, and the force of an interlocutory injunction could be no greater.   Nor is it contended that the electric current, which is the subject-matter of the order, is not property in contemplation of the statute. Now, we think that the possession of this property is affected by the order.   It is evidently the purpose of the statute to include not only cases where the injunction operates to change the possession, but also cases where its operation is to affect the possession, without changing it ; for that is the very language of the statute.   The property in question is the property of the electric lighting company, and remains its property until it is delivered to the club under the contract, when it becomes the property of the club.   The company claims, and is entitled to, the free and unrestricted ownership, control and disposition of that property, subject only to such rights as the club may have to the enforcement of the contract.   The order appealed from prevents and prohibits that ordinary and essential incident of ownership.   It is, therefore, necessarily an order affecting the possession of property.   To say that it is merely an order to maintain the *status quo*, which undoubtedly it is, does not serve the argument ; for that is no more than to say that it does not change the possession, and does not fall within the category of orders of that class.   We think that an order may be justly said to affect the possession of property which limits or restricts the use of property in a manner and to an extent to which it would not have been limited or restricted, were it not for the order. Nor does the fact that the restriction may be right and just help the argument : for that is the very question to be de-

termined by the appeal, as well as by the court below in the first instance. We must regard the appeal in this case as properly taken.

2. Passing to the merits of the case, we are confronted by the difficulty that the merits of the controversy can scarcely be said to be before us. The order appealed from is merely an interlocutory order, a conservative measure intended to preserve existing conditions and to save all rights until the merits of the controversy can be definitely ascertained by such proofs as the parties may be able to adduce. It is not an adjudication of rights in any proper sense of the term; and while, of course, under such circumstances, an injunction, when granted, must be in the line of the relief prayed for by a complainant and based upon a *prima facie* claim of right made out by the complainant, yet it does not follow that the final adjudication will be in accordance with the interlocutory order. We recall this elementary principle merely to reinforce our idea that, although the right of appeal is allowed in such cases and parties are entitled to have such appeals determined, yet we should not lightly disregard the action of the court below, or reverse that action, unless it is made very plain to us either that such action was erroneous, or that it is in the interest of justice that it should be vacated. One who appeals from a merely interlocutory order should, therefore, show a very strong case to overthrow action intended in its very nature to give the court reasonable opportunity to determine the question of right in the controversy between the parties.

Five grounds are alleged here by the appellant to show that the order of the court below for the preservation of the status between the parties *pendente lite* was not warranted. These are: 1st. That there was no valid contract between the parties; 2d. That the alleged contract, if valid, is not one which a court of equity will direct to be specifically performed; 3d. That the violation of the contract by the appellee now justifies the appellant in declining further to perform it; 4th. That no irreparable injury will accrue

to the appellee from the appellant's failure or refusal to perform the contract; and, 5th. That the appellee has ample remedy at common law, and he should be remitted to his action at law.

With reference to the first ground of objection, to the effect that there was no valid contract between the parties, this, even if it can be substantiated, is premature. It seems to be based upon the supposition that Mr. John A. Baker, who signed the contract for the Metropolitan Club, had no authority under the charter or by-laws of the club so to bind it. But the charter and by-laws of the club are not in evidence. They do not appear in the record before us. And the character of the contract entered into by them does not of itself exclude it from the cognizance of an executive committee or of the chairman of an executive committee. But the contract bears the corporate seal of the club, which alone would have been sufficient execution of it at common law; and it has been acted upon by both parties for upwards of seven years. It is rather too late now for the appellant to seek to repudiate it upon any such ground as this. Moreover, it is not quite apparent that, for the purpose of the present suit, any formal execution of the contract by the appellee was at all necessary. We do not mean to be understood as forestalling the final adjudication of this question, any more than any other question in the case, in accordance with such testimony as may hereafter be adduced in the cause. What we mean to say is, that, for anything that as yet appears in the record, we must regard the contract as having been duly executed, and as being a valid and subsisting contract.

But, in the second place, is it such a contract as that a court of equity will not decree specific performance of it, and will leave the parties to their ordinary remedy at common law? It is alleged that the contract is harsh, unjust, and unconscionable. This alleged injustice, when sifted to its ultimate elements, consists solely and exclusively in the fact, if fact it be, that the price stipulated to be paid by the

appellee to the appellant for the use of the electric current is less by some three thousand dollars a year than the appellant claims that it ought to be. But no basis is shown for this claim. It may be shown to be well founded: but there is nothing thus far to show it. An advance of ten per centum upon the price of gas would seem not to be an unreasonably or unconscionably low price for the electric current under the conditions then existing or under present conditions. Certainly, in the presence of a contract, for all that yet appears, deliberately and knowingly entered into by the appellant and with a better knowledge of the conditions by the appellant than the appellee, a contract acted upon for several years by the parties, it ought to require very strong proof to show unconscionable advantage taken of the appellant or serious misrepresentation made by the appellee before such contract can be repudiated for intrinsic injustice in the very important element of price.

This, of course, is a different question from that of the excessive and extravagant use of the electric current charged against the appellee in the answer, but which does not seem to be insisted on in this appeal. That question, also, it would be premature to consider here.

But a more serious difficulty is presented by an apparent want of mutuality in the contract. The electric lighting company seems to be perpetually bound to it, while the appellee may withdraw from it at any time after the expiration of one year from the date of its execution. That is, at the present time, under the terms of the contract, the appellee may terminate it at any time, while the appellant may never become entitled to terminate it.

Such a want of mutuality, it must be understood, does not make a contract less binding or less valid than it might otherwise have been; but it may prevent specific performance through a court of equity. *Marble Co.* v. *Ripley*, 10 Wall. 340; *Texas Railroad Co.* v. *Marshall*, 136 U. S. 393; *Duval* v. *Myers*, 2 Md. Ch. 401; *Gelston and Meyenberg* v. *Sigmund*, 27 Md. 334; *O'Brien* v. *Pentz*, 48 Md. 562.

But it does not necessarily follow in all cases that this want of mutuality will preclude the intervention of a court of equity to decree specific performance.   For if one party is in possession of a public franchise, and such franchise amounts to a virtual monopoly of the business, and such party enters into a special contract not otherwise invalid, it is not quite certain that such special contract may not under some circumstances be specifically enforced, at all events so far as by injunction to prevent its violation, when injunction will serve all the purposes of relief, although the obligation upon the one side may be perpetual and on the other only temporary.   Under the conditions disclosed in the record before us, and at the present stage of the proceedings, we are not prepared to say that there may not be in this regard exceptions to the general rule with regard to mutuality.   We do not finally decide that question now. There is sufficient in this case to require the final determination of it to be postponed until it is shown by proof what kind of a franchise the appellant is exercising, and what the special character is of the obligations which it has assumed to the public.

It is quite apparent that the appellant's threat to cut off the electric current from the appellee's premises would occasion serious, if not irreparable, injury to the appellee, if done without just right.   And it would be done without just right if the contract is fair and just, and a valid subsisting contract ; and it is finally made to appear that not otherwise could the appellee be properly supplied.   Irreparable injury is not the loss of that for which some substitute might be had.   Irreparable injury implies the destruction of some right.   If the appellee here is entitled to the right which it claims under its contract, irreparable injury would result from the proposed action of the appellant which would destroy that right.   While that right, like every other right, may have a money value at common law, for which its destruction may be compensated, it is clearly of the class of rights which equity should protect by in-

junction: for it is possible that no pecuniary compensation could restore the right destroyed or any equivalent of it.

We are of opinion, therefore, with a due reservation of the fundamental questions involved to the final hearing, that *the order now appealed from should be affirmed, with costs. And it is so ordered. And it is also ordered that the cause be remanded to the Supreme Court of the District of Columbia with directions further to proceed therein according to law.*