## LAUGHLIN et al. v. BERENS.
### No. 7974.

United States Court of Appeals for the District of Columbia.

Decided May 4, 1942.

Mr. James J. Laughlin, of Washington, D. C., for appellant.

Mr. Paul E. Lesh, of Washington, D. C., for appellee.

Before STEPHENS, EDGERTON and RUTLEDGE, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from interlocutory orders of the District Court of the United States for the District of Columbia of May 8 and 9, 1941. The nature of these orders will appear more particularly below. The appeals are taken under D.C.Code (1940) § 17—101,[1] providing that "Appeals shall . . . be allowed to . . . [the] United States Court of Appeals for the District of Columbia from all interlocutory orders of the District Court of the United States for the District of Columbia . . . whereby the possession of property is changed or affected . . .." It is necessary for an understanding of the nature and effect of the orders and of the questions presented on this appeal to refer to a previous appeal taken in the same case and disposed of in this court in John E. Laughlin and James J. Laughlin v. F. W. Berens, December 23, 1940, 73 App.D.C. 136, 118 F.2d 193. As they appear from the opinion and record in that appeal and from the record in this one, and from the records of this court, the facts are as follows:

On October 21, 1939, the landlord and

[1] Act of Feb. 9, 1893, 27 Stat. 435, ch. 74, § 7; Act of Mar. 3, 1901, 31 Stat. 1225, ch. 854, § 226; Act of Mar. 3, 1921, 41 Stat. 1312, ch. 125, § 12.

tenant branch of the Municipal Court of the District of Columbia in a possessory action brought by the appellee in the instant case against one of the appellants, James J. Laughlin, as a tenant in default of rent, entered a judgment that the appellee was entitled to possession of the premises known as No. 2244 Cathedral Avenue, N. W., in the District of Columbia. The appellants then commenced an action in the District Court against the appellee to establish an equity in the premises, to compel the appellee to account for moneys had and received with respect to the premises, and for an injunction to restrain enforcement of the Municipal Court judgment. The District Court issued an order restraining enforcement of that judgment pendente lite, and a hearing was held in the District Court before Judge T. Alan Goldsborough on December 4, 1939. At the close of the appellee's testimony in that hearing a colloquy between the parties and Judge Goldsborough revealed that the appellee was willing to recognize the right the appellants asserted in the premises if they would pay him a designated sum. The appellants informed Judge Goldsborough that they did not have that sum at the moment but could secure it within a short time. He thereupon continued the case to December 8, 1939, stating that "if it is not paid by Friday morning [December 8] at 9:45 I will have to sign an order dismissing the complaint." On the morning of December 8 the appellant James J. Laughlin, who was acting as counsel in the case for himself and the other appellant, John E. Laughlin, appeared before Judge Goldsborough and informed him that the appellants had not been able to secure the required sum and orally requested an extension of time until December 11 in which to make the payment. Judge Goldsborough expressed himself as of the view that, although the request was in his opinion reasonable, he was as a matter of personal honor, in view of the statement he had made on December 4, obliged to enter an order dismissing the complaint unless the appellee should agree to the requested extension. This the appellee, through counsel present at the time, declined to do. Therefore Judge Goldsborough on the same day, December 8, entered an order dismissing the appellants' complaint and dismissing the order restraining pendente lite the enforcement of the judgment of the Municipal Court and ordering that the ap-

pellee Berens "be forthwith allowed to recover his property." Later on that same day the Marshal of the District of Columbia, through a writ of restitution issued by the Municipal Court, executed the judgment of that court by placing the appellee in possession of the premises. From the order of December 8, 1939, the appellants appealed, and on December 23, 1940, in John E. Laughlin and James J. Laughlin v. F. W. Berens, cited above, we reversed the order of December 8. We did so upon the ground that Judge Goldsborough had not exercised his judicial discretion upon what was in effect a motion by the appellants for a further continuance of the injunction suit, but had instead been governed in the disposal of the case by what he considered to be a matter of personal honor. We expressed no view on the merits of the District Court's action or with respect to the disposition of the property pending further proceedings to be had in the District Court. The mandate of this court was issued on January 13, 1941.

The appellants then took steps directed toward regaining possession pendente lite of the premises involved in the litigation. First, on January 14, 1941, after the receipt by the District Court of the mandate of this court, they applied to Judge Goldsborough for restoration of possession. He denied their application. Then on January 22 they applied to this court for a writ of mandamus to compel the trial court to restore them to possession. This court denied that application. Then on March 24 the appellants obtained an order of restitution from Judge Jennings Bailey of the District Court. Judge Bailey made that order under the view that possession of the premises in question had been restored to the appellee by virtue of the District Court order of December 8, 1939. Upon being informed later that the appellee had been placed in possession of the premises through writ of restitution issued upon the Municipal Court judgment of October 21, 1939, Judge Bailey, on May 8, 1941, acting on a motion addressed to that end, ordered vacated his order of restitution of March 24—which had not yet been executed. While that motion to vacate was pending the appellants, on April 22, moved before Judge Daniel W. O'Donoghue of the District Court for a preliminary injunction "to restore the status

quo." Judge O'Donoghue on May 9, 1941, ordered that motion denied.

The instant appeal is taken as of right from the interlocutory orders of May 8 and 9, 1941.[2] Two questions are presented: (1) Were the orders appealed from appealable, i. e., within the class of orders described in D.C.Code (1940) § 17—101 above quoted; in short, were they orders "whereby the possession of property is changed or affected." If the answer to that question is in the affirmative, then (2) were the orders erroneous.

We think that under New Negro Alliance v. Harry Kaufman, Inc., 1935, 64 App.D.C. 362, 78 F.2d 415, Mellon v. Mertz, 1929, 58 App.D.C. 302, 30 F.2d 311, Chas. McCaul Co. v. Harr, 1921, 51 App. D.C. 111, 276 F. 633, and Hayes v. Conger, 1911, 36 App.D.C. 202, and the construction they put upon D.C.Code (1940) § 17—101,[3] the orders of May 8 and 9, 1941, sought to be reviewed in the instant case, are not appealable. The cases referred to indicate that Congress by the statute intended to permit appeals only from interlocutory orders which if carried into effect would change or affect the actual possession of property as it existed immediately before the orders, i. e., intended to permit appeals from orders which would change the status quo ante the orders. In the instant case the actual possession before the orders appealed from was in the appellee. While Judge Bailey's order of March 24, 1941, ordered the possession changed to the appellants (and would therefore have been appealable by the appellee), that order was not executed and was rescinded by the order of May 8, 1941, one of the two orders appealed from.[4] The order of May 8 was the equivalent of a denial of the application to change the possession from the appellee to the appellants and thus left the possession where it was at the time the order was sought. To

say that such an order is appealable because it "affected" possession would be to negate the rulings in the cases cited. It no more "affected" possession than did the orders in those cases, which left the possession where it was immediately before they were made. Judge O'Donoghue's order of May 9, 1941, the second of the two orders appealed from, also left the possession where it was immediately before the order, that is, in the appellee, and is hence also not appealable.

The contention is made that the possession which the appellee Berens got under the writ of restitution issued out of the Municipal Court must be considered a wrongful possession, one infected with the error committed by Judge Goldsborough when on December 8, 1939, he failed to exercise his discretion and dismissed the injunction suit and dissolved the restraining order and ordered the appellee to be allowed to recover his property. Since this possession was wrongful—so the contention goes—it was not a possession which can in law be recognized, and therefore the possession must be considered to have remained in the appellants during all of the time subsequent to Judge Goldsborough's dissolution of the restraining order and therefore to have gone out of the appellants only by virtue of the orders of Judge Bailey and Judge O'Donoghue which are appealed from. We think this contention not supportable: To begin with it is to be noted that the possession received by the appellee Berens was received by virtue of the Municipal Court writ of restitution, not by virtue of the order of December 8, 1939, dismissing the injunction suit and dissolving the restraining order. It is true that the order of dismissal in terms provided for restoration of the property to the appellee, but in legal effect it merely removed the restraint which had been put by the District Court upon the Municipal

---

[2] As will appear below each of these orders was of the same legal effect and there seems therefore no point in an appeal from the second. Moreover a single appeal from two different orders is, so far as we know, without precedent. But no point is made of this by the appellee.

[3] At the time of these decisions D.C. Code (1929) tit. 18, § 26.

[4] It appears from the affidavits printed in the appendix to the appellants' brief that as a result of acquiescence by one William R. Boger in Judge Bailey's order of March 24 the appellant James J. Laughlin on April 4, 1941, moved personal effects into a spare room in the premises in question and was given a key to the premises, Boger, it appears, was himself in possession under the appellee Berens. But nothing is said in the briefs concerning this entry by Laughlin and accordingly it is assumed that the appellants base none of their contentions on appeal upon it.

Court judgment, and restitution of possession to the appellee took place, in both actual and legal effect, as a result of the operation of the Municipal Court judgment. But apart from this, i. e., even if the possession of the appellee be taken to be the result of Judge Goldsborough's order, the theory that the appellee's possession was wrongful is, we think, unsupportable for the reason that it omits to consider that the judgment or decree of a trial court, even though it prove on appeal to have been erroneous, is operative unless superseded or in some manner stayed pending the appeal. Shaw v. Lane, 1917, 47 App.D.C. 170, appeal dismissed Shaw v. Payne, 1920, 254 U.S. 609, 41 S. Ct. 60, 65 L.Ed. 436. Once the injunction was dismissed by Judge Goldsborough and the restraining order in consequence dissolved, there was nothing legally outstanding which forbade the Municipal Court to put the possession in the appellee. It follows that the writ of restitution issued by the Municipal Court was properly issued and that the possession which the execution of the Municipal Court's judgment put in the appellee was a rightful possession.

The further contention is made that even if the possession of the appellee Berens was rightful pending the appeal from Judge Goldsborough's order of December 8, 1939, it became wrongful immediately upon reversal of that order so that at that moment possession must be considered to have been again and rightfully in the appellants. But this further contention is also, we think, not supportable. "A suit to restrain an official [or court] from doing a particular thing cannot be revised on appeal into an action to compel the undoing of the act sought to be restrained. A mandatory decree cannot be passed upon a bill the sole object and prayer of which is for restraint. 'The things sought to be prohibited have been done, and cannot be undone by any order of this court or the court below.' . . . The bill having been dismissed, and no action taken to preserve the status of the case made by the bill pending appeal, this court [and the court below] is without jurisdiction to revive it and grant relief either general or special." (Shaw v. Lane, 47 App.D.C. at pages 173, 174.)

It is suggested that if a plaintiff suing to obtain possession of premises presently occupied by a defendant should, pending the trial, physically oust the defendant and then obtain a court order preserving pendente lite the possession thus obtained, such an order should be appealable even though it did not change the possession which existed immediately before the order, i. e., the possession wrongfully gained after suit brought. But, since in the instant case the possession of the appellee Berens under the Municipal Court judgment was obtained after termination of the injunction suit in the trial court and was, as above explained, rightful, there is no analogy between that possession and a possession wrongfully obtained during a trial. Therefore, no order preserving such a wrongful possession is before us, and it will be time enough to rule upon the appealability of such an order when such a one is issued (it is difficult to imagine the issuance of one under the circumstances supposed) and an appeal therefrom taken.

Since we answer the first question in this case in the negative it is not necessary to discuss or answer the second. The orders not being appealable, we have no jurisdiction to pass upon their merits, and the appeal is accordingly

Dismissed.

RUTLEDGE, Associate Justice (dissenting).

I think the orders are appealable and should be affirmed.

Section 17—101 gives an appeal from interlocutory orders "whereby the possession of property is changed *or affected.*" The order's substantive effect, not its negative form, is decisive.[1] Chas. McCaul Co. v. Harr, 1921, 51 App.D.C. 111, 113, 276 F. 633, 635. Possession clearly is affected when an order changes the legal right of possession. The orders now appealed had that effect.[2]

---

[1] Since, in my view, the orders in appeal had affirmative effect, though they were negative in form, it is not necessary to reconsider our previous decisions, cited by the majority, in light of the reversal of the formerly prevailing "negative order" rule as to jurisdiction to review orders of the Interstate Commerce Commission. Cf. Rochester Telephone Corp. v. United States, 1939, 307 U.S. 125, 140–143, 59 S.Ct. 754, 83 L.Ed. 1147.

[2] Appellants made other applications for relief which were denied but not appealed. However, no point is made that the failure to appeal these orders foreclosed consideration on appeal of those

The temporary restraining order gave appellants the right of possession pending suit. The reversed order of December 8, 1939, purported to dissolve it and also to dismiss the suit. The dissolution was no more than colorable, because that order was made for reasons of personal honor and therefore without exercise of judicial discretion. Laughlin v. Berens, 1940, 73 App.D.C. 136, 118 F.2d 193. Consequently, it only colorably released the Municipal Court's judgment from the restraining order's inhibition. There was the form, though not the substance, of judicial action. The resulting execution was infected with the vice which vitiated the release. It was subject to the risk that appeal might avoid the colorable release, as it did. The execution therefore created only a colorable right of possession in appellee, in reliance upon which he went into actual occupancy.

When reversal occurred, the color of right dissolved. All legal foundation was stricken from the entire order, including dissolution of the restraining order. That was part and parcel, as well as a necessary incident, of the order of dismissal, made for the same reason and invalidated for the same vice. Appellee remained in occupancy notwithstanding the reversal, but thence forward without even color of right of possession until the appealed orders were entered.[3] Appellants then had the right of possession, unimpaired by conflicting color of claim, though they remained stripped of its benefit. Substantively in legal effect the situation was as if the restraining order had never been dissolved. If we assume the order of dis-

solution was sufficient to sustain appellee's occupancy until reversed,[4] notwithstanding its fatal defect, it could not do so thereafter. Nor could the execution on the Municipal Court judgment, since it was released only subject to the same defect and the contingency of reversal.

In this situation and without more, that is, without a further contrary exercise of the court's discretion, appellants became entitled to "reinstatement," "restoration," or "continuance" of the restraining order, however the matter may be called. In substantive terms, the reversal entitled them to possession both in law and in fact, in accordance with the usual rule, on which they rely, that reversal requires restoration of property of which the order reversed has deprived the appellant.[5] When therefore appellants applied for relief and it was denied, regardless of the order's negative form, the effect was to deprive them of the legal right to possession. In substance, for the first time by an exercise of judicial discretion the restraining order was dissolved and its effect in giving appellants the right of possession pendente lite was dissipated. Then appellee's occupancy first became rightful and valid in law, except for the tenuous colorable protection it may have had during the period of appeal. In my opinion, therefore, the orders both "changed" and "affected" possession and were appealable.

But appellants' claim overshoots the mark. Reversal without more entitled them to restoration to occupancy in accordance with their then existing right of possession. But it did not deprive the trial court of discretion to alter the possession by a

now here. They may be treated therefore as having first raised and disposed of the question following the reversal on the former appeal.

3 The situation was not greatly different after the reversal from one in which a new status quo would be created during the litigation by self-help. It would seem that an order denying relief from such a status quo, though negative in form, would be appealable within Section 17—101 as changing the right of possession, though it would not change the actual occupancy.

Shaw v. Lane, 1917, 47 App.D.C. 170, 173–174, is not in point. The suit was for injunction to restrain the Secretary of the Interior from approving and delivering certain mineral leases. The trial court dismissed the bill. Pending appeal

the Secretary approved and delivered the leases. This court held that the Secretary's action rendered the case moot and dismissed the appeal. There was no question of abuse of discretion or failure to exercise it, or of effect of reversal upon rights of possession pendente lite.

4 Sufficient perhaps to prevent them from being trespassers before the reversal or, possibly, liable for rent during the period of appeal.

5 Cf. Wilson v. Newburgh, 1914, 42 App.D.C. 407; Gregg v. Forsyth, 1865, 2 Wall., U.S., 56, 17 L.Ed. 782; Ferran v. Mulcrevy, 1935, 9 Cal.App.2d 129, 48 P. 2d 984; Sleeper v. Killion, 1917, 182 Iowa 245, 164 N.W. 241; Manes v. J. I. Case Threshing Machine Co., Tex. Civ.App.1927, 295 S.W. 281; 5 C.J.S., Appeal and Error, § 1950, p. 1476.

new and proper exercise of judgment. In other words, possession pendente lite was then, as it was in the beginning and is now, a matter for the trial court's discretion.[6] Reversal did not alter this. It merely required that restoration be made or the court validly exercise its judgment to the contrary effect. That has been done. The order of May 8 shows that the court, for reasons independent of the mere effect of reversal, found that the premises should remain in appellee's hands. This gave him the right of possession and validated his occupancy from that time forward. The reasons for doing so were clearly sufficient. Consequently the orders should be affirmed.

The suit is already long drawn out. The litigation has consumed much time and energy in three courts, some of it in multiplicitous applications for relief on interlocutory matters. There have been two appeals and the end is not in sight. It may not be amiss to state the hope that the next one will be on the merits and final.

[6] McMahon v. Cooper, 1913, 23 Idaho 413, 130 P. 456; Brady v. Carteret Realty Co., 1905, 67 N.J.Eq. 641, 60 A. 938, 110 Am.St.Rep. 502, 3 Ann.Cas. 421; Frisby v. Rockins, Tex.Civ.App. 1937, 105 S.W.2d 362; Lane v. Kempner, Tex.Civ.App.1916, 184 S.W. 1090; cf. Forbes v. Hall, 1897, 102 Ga. 47, 28 S.E. 915, 66 Am.St.Rep. 152; Kester v. Schuldt, 1906, 11 Idaho 663, 85 P. 974; Cline Piano Co. v. Sherwood, 1910, 57 Wash. 239, 106 P. 742; Atlantic Coast Line R. R. v. Florida, 1935, 295 U.S. 301, 310, 55 S.Ct. 713, 79 L.Ed. 1451; Jacobs v. Jacobs, 1901, 62 S.W. 263, 23 Ky.Law Rep. 186; Wenzel v. Milbury, 1901, 93 Md. 427, 49 A. 618; Logan v. Yoes, 1911, 30 Okl. 65, 118 P. 353. See also Buffington v. Harvey, 1877, 95 U.S. 99, 24 L.Ed. 381; Indiana Quartered Oak Co. v. Federal Trade Comm., 2 Cir., 1932, 58 F.2d 182.