Kenneth DAMERON, et al., Appellants,

v.

CAPITOL HOUSE ASSOCIATES LIMITED PARTNERSHIP, Appellee.

No. 79–491.

District of Columbia Court of Appeals.

Argued Oct. 16, 1980.

Decided May 27, 1981.

Kenneth J. Loewinger, Washington, D. C., for appellants.

John R. Gerstein, Washington, D. C., with whom Eric A. von Salzen, Washington, D. C., was on the brief, for appellee.

Before KERN, NEBEKER and HARRIS, Associate Judges.

NEBEKER, Associate Judge:

This case is another episode in the proliferation of legal weapons on the frontier of landlord-tenant disputes.

On December 29, 1978, the District of Columbia Rental Accommodations Office authorized a rent increase for appellees, Capitol House Associates, to be implement-

ed in February of the following year. In response, approximately half of the tenants tendered their February rent by checks in the amount of the "old" rent with notations "rent paid in full" or other words to that effect. They did the same in March.

On March 9, 1979, the appellee filed suit for possession based on nonpayment of rent. The striking tenants obtained counsel who requested consolidation of the suits and a jury trial. In response, utilizing a now familiar device created by the United States Court of Appeals for the District of Columbia Circuit,[1] the appellee moved for a protective order requiring the tenants, now appellants, to deposit their full monthly rent into the registry of the court, pendente lite. The appellee further requested that it be entitled to withdraw each month from the registry of the court the "old" rent charged prior to the February 1st increase, leaving the "amount in dispute" in the court coffers.

Appellants then requested and received a hearing on the matter. At that hearing, appellants' counsel acknowledged that the amount of the "old" rent was not in dispute but stated that the tenants intended to raise housing code violations as a defense to the action and, therefore, the entire fund should be preserved to meet their claims for potential set-off.

The trial judge examined evidence presented by appellants which consisted of copies of photographs revealing minor paint and plaster defects. In response, appellee testified that these defects had been abated within ninety days of a housing inspection made in June of 1978. After hearing all the evidence, the trial judge noted that the Capitol House building "could fairly be characterized as a middle or upper-middle income apartment house . . . and that the conditions in the building were not typical of inner city low-income developments or projects." Therefore, in view of the de minimis nature of the alleged housing code

violations, the court ordered deposit of the full rent into the registry of the court with that portion of the fund equal to the "old" undisputed rent released to the landlord on a monthly basis. The court ruled that "the fund . . . preserved in the registry of the court in this case, in light of the kinds of housing violations which defendants were able to discuss or demonstrate at the hearing on the motion for [a] protective order, was much more than adequate to fully protect the defendants' need for any security in this regard."

Subsequently, appellants were denied a stay of the order in both the trial court and this court. On direct appeal, appellants now charge the trial court with error in releasing the "old" rent from the registry of the court without a full evidentiary hearing at which the appellee would be required to show an extraordinary need for the funds and a likelihood of success on the merits.

At oral argument, we requested supplemental briefs on the question whether the protective order as devised is appealable. We dismiss for want of jurisdiction because the order is neither a final order, an interlocutory order which falls within the provisions of D.C.Code 1973, § 11–721(a)(2), nor an order collateral to the main case under the *test* of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

I

Protective orders were first suggested by the circuit court in dictum. *See Javins v. First National Realty Corporation*, 138 U.S.App.D.C. 369, 381 n.67, 428 F.2d 1071, 1083 n.67, *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970). Other jurisdictions have established a similar procedure by statute.[2] Nevertheless, five weeks after *Javins*, the circuit court sanctioned protective orders in *Bell v. Tsintolas*

---

1. *See Bell v. Tsintolas Realty Co.*, 139 U.S.App. D.C. 101, 430 F.2d 474 (1970).

2. *See, e. g., Emray Realty Corp. v. Stefano*, 160 N.Y.S.2d 433, 5 Misc.2d 352 (Sup.Ct.1957);

Md. Real Property Code Ann. § 8–211 (Supp. 1979); Mass.Ann.Laws ch. 239, § 8A (Michie/Law. Co-op, Supp.1980); *id.* ch. 11, § 127F (1975).

*Realty Co., supra.*[3] In deciding to approve the use of a protective order by the trial court, the circuit court carefully weighed its impact on the rights and duties of the landlord and his tenant. With certain caveats, the court justified the order as an appropriate exercise of the trial court's equity power in defending the landlord from the severe disadvantages of foregoing rent during a period of prolonged litigation. *Id.,* 139 U.S.App.D.C. at 109, 430 F.2d at 482. The court noted that the tenant, on the other hand, is not unnecessarily burdened by the order because current rental payments are a contractual obligation which he voluntarily assumed at the initiation of the lease.[4]

The protective order is an equitable tool of the court requiring the exercise of sound discretion on a case-by-case basis. While the circuit court in *Bell, supra,* made several suggestions in regard to the procedure and the relevant factors to be weighed in determining an appropriately tailored order,[5] this court met the issue on its merits in *McNeal v. Habib,* D.C.App., 346 A.2d 508 (1975). *See also Armwood v. Rental Associates, Inc.,* D.C.App., 429 A.2d 190 (1981). There we held that the due process clause does not require an evidentiary hearing in setting the protective order, "although a tenant (or his counsel) should be afforded an adequate opportunity to be heard as to the equities of a protective order before one is entered." *Id.* at 513–14. When this minimal procedural requirement is met, the trial judge has fulfilled the prerequisite to his acting with discretion in exercising his equity powers. *See also Bell, supra,* 139 U.S. App.D.C. at 110, 430 F.2d at 483.

Appellants contend, however, that the procedure has been abused in this case in that the trial judge has essentially entered two rulings, one imposing the protective order and one releasing monies from the registry of the court to the landlord-appellee. Therefore, in appellants' view, the trial judge was required by the due process clause and the second prong of our decision in *McNeal v. Habib, supra* at 514, to hold an evidentiary hearing on the merits of the parties' entitlement to the fund. We disagree, finding the judge's action was a permissible exercise of his equity power as outlined by *Bell, supra,* and *McNeal, supra,* and the subsequent circuit court decision in *Cooks v. Fowler,* 148 U.S.App.D.C. 245, 253, 459 F.2d 1269, 1277 (1971).

The evidentiary hearing which appellants seek is only appropriate at the conclusion of the suit for possession if the trial of the case, itself, does not determine the proportionate rights of the parties. In *McNeal v. Habib, supra,* the action for possession became moot and the trial judge erroneously released the funds to the landlord without holding the necessary hearing. On appeal, we held that a hearing was required at the termination of the controversy to determine the abatement, if any, to which the tenant

---

3. Two cases were before the circuit court on appeal. One had reached final judgment for the landlord in the trial court and that judgment was stayed by this court conditioned on payment of the accrued rent into the registry of the court. The other case had not reached a judgment, but this court also granted a stay of the protective order in that case conditioned on payment of accrued rent into the registry. The circuit court did not discuss the appealability of the orders and, despite the fact that the only matter before it was the propriety of the stay, the court reached the merits of the trial court's use of the protective order. Nonetheless, we are bound by the decision. *M. A. P. v. Ryan,* D.C.App., 285 A.2d 310 (1971).

4. The protective order is aptly named because it benefits both landlord and tenant. The tenant defending the possessory action is protected from the forfeiture of his lease in the event he is successful at the end of lengthy litigation but is unable to pay the rent in arrears. Other tenants are also protected from the potential decline in services resulting from a drop of income to their landlord. *See generally National Capital Hous. Auth. v. Douglas,* D.C.App., 333 A.2d 55 (1975).

5. "In making a determination of need, the trial court may properly consider the amount of rent alleged to be due, the number of months the landlord has not received even a partial rental payment, the reasonableness of the rent for the premises, the amount of the landlord's monthly obligations for the premises, whether the tenant has been allowed to proceed *in forma pauperis,* and whether the landlord faces a substantial threat of foreclosure." *Bell, supra,* 139 U.S.App.D.C. at 111, 430 F.2d at 484.

was entitled depending on evidence of housing code violations, further defects appearing during the course of litigation, and the length of time during which the tenant held over denying the landlord productive use of the property. *Id.* at 514.

A protective order, on the other hand, is filed pretrial when the tenant appears and defends the suit on the basis of housing code violations. At this early stage in the proceedings, the evidentiary hearing which is mandated by *McNeal v. Habib* for dispersal of funds at the termination of the case is not permissible because it would preempt the controversy and might deny a party's constitutional right to trial by jury. Consequently, a protective order entered by the trial judge is valid only if it is a legitimate exercise of the court's equity power as contemplated by *Bell, supra,* and effects no permanent disposition of property to the prejudice of the parties such as the order overturned in *McNeal v. Habib, supra.* Otherwise, a *McNeal*-type hearing would be required, and we refuse to impose such a requirement at the preliminary stage.

Thus, the issue of whether this pretrial order is an appropriate one is resolved by our examination of the nature of the order. Furthermore, while we believe that the order in this case is a valid protective order, we also hold that the order is not appealable.[6]

## II

We first confirm the rationale for the protective order. The order protects the landlord from forfeiture of income while unwanted tenants hold over in possession without paying rent. It also protects tenants successful in their litigation from forfeiting their lease at the conclusion of the litigation because they cannot make up an unpaid deficiency. Furthermore, it is a manifestation of the good faith of the tenant's asserted defense. *See Davis v. Rental Associates, Inc.,* D.C.App., 431 A.2d 23 (1981). And, finally, it provides a fund from which the tenant may receive an abatement if housing code violations warranting an abatement are indeed found. The order of the trial court in this case fulfills these objectives.

This protective order is also justified because the court has afforded appellants an adequate opportunity to argue the equities of their case. *See McNeal v. Habib, supra* at 513–14 and note 5, *supra.* In suing only for possession, the landlord normally passes up his right to collect back rent. *See Paregol v. Smith,* D.C.Mun.App., 103 A.2d 576, 578 (1954), and Super.Ct. L&T R. 5(b). However, he is entitled to judicial protection of his fair compensation "for the possession he loses during the period of litigation." *Cooks v. Fowler, supra,* 148 U.S.App.D.C. at 250, 459 F.2d at 1274; *Bell, supra,* 139 U.S.App.D.C. at 112, 430 F.2d at 485. "In the ordinary course of events . . . the tenant will be called upon to pay into the court registry each month the amount which he originally contracted to pay as rent." *Bell, supra* at 111, 430 F.2d at 484. The amount necessary to provide this protection may vary depending on the weight given by the court to the appropriate factors. *Id.*[7] In this case, the parties and the court agreed that the only significant factor in the dispute was the rent increase authorized by the Rental Accommodations Office. Finding also that the housing code violations were de minimis, the court concluded that the parties would be sufficiently protected and the objectives of the protective order would be adequately served by maintaining only the amount in dispute in the

---

6. When determining the appealability of orders which potentially threaten irreparable harm, courts must often examine the merits of the underlying claim. *See, e. g., United States v. Wood,* 295 F.2d 772 (5th Cir.), *cert. denied,* 369 U.S. 850, 82 S.Ct. 933, 8 L.Ed.2d 9 (1961); *see also* Wright, Miller & Cooper, 15 Federal Practice and Procedure: Jurisdiction § 3911 at 495. We do so here because the protective order has its genesis in the nature of the underlying dispute between landlord and tenant.

While we hold that this protective order is not appealable, we do not foreclose review of an order which is a gross abuse of discretion *and* irreparably injures one party.

7. *See* note 5, *supra.*

registry and passing through to the landlord the undisputed rent. Thus, the court has aptly tailored the order to the equities of the case. *See Cooks v. Fowler, supra,* 148 U.S.App.D.C. at 251, 459 F.2d at 1275.

In an appropriate case where the tenants identify major housing code violations, access to the deposited monies would normally await the outcome of the dispute. But the circuit court which fashioned and approved this equitable remedy also indicated that the court cannot justify "retention in the registry of the court of a portion as to which the tenant's ultimate liability to pay is crystal clear and the landlord's immediate need is extreme." *Id.* Such pass through, in our view, does not violate due process. In *Lindsey v. Normet,* 405 U.S. 56, 66–67, 92 S.Ct. 862, 870, 31 L.Ed.2d 36 (1972), the Court found no constitutional barrier to an Oregon statute providing for accrual of rent pending settlement of the underlying litigation. There being no dispute as to the "old" rent which was passed through to the landlord in this case, the order of the trial court is a justified exercise of discretion in fashioning the equitable remedy authorized in *Javins, Bell, Cooks,* and *McNeal.* Not only did the court hold the appropriate hearing, but it also permitted appellants nineteen days to prepare. We see no just cause for allowing the protective order to become an economic weapon of unreasonable proportion when its rationale is to assure equity.

### III

Therefore, since we conclude that the trial court's authority to act in this case is justified, we must determine whether these orders are appealable. In no previous case has a protective order per se been appealed directly.[8]

Under D.C.Code 1973, § 11–721(a)(1), we have jurisdiction over "all final orders and judgments of the Superior Court." A final order must dispose of the entire case on the merits and leave nothing remaining but execution of the judgment. *Trilon Plaza Co. v. Allstate Leasing Corp.,* D.C.App., 399 A.2d 34, 36 (1979). In *Trilon Plaza, id.* at 37, this court held that an order establishing the amount of attorney's fees to be paid by a litigant was conclusive and final for purposes of appeal. In this case, however, the protective order is strictly a preliminary safeguard for the parties and the integrity of the judicial process. It is subject to revision at any time during the pendency of the action. *See Blanks v. Fowler,* 148 U.S.App.D.C. 258, 260, n.13, 459 F.2d 1282, 1284 n.13 (1971).[9] Final entitlement to specific amounts is determined only at the conclusion of what may be prolonged litigation. This protective order has no permanent impact on the rights of the parties. *Cf. Fahey v. Calverley,* 208 F.2d 197, 200 (9th Cir. 1953) (order is appealable because the effect of the order is to withdraw from the registry of the court funds upon which a lien is claimed).[10] If the amount in the registry of the court at the conclusion of the case is insufficient to satisfy a judgment rendered in favor of the tenants, the landlord can remedy the insufficiency through other means. *See, e. g., United States v. Beasley,* 558 F.2d 1200, 1201 (5th Cir. 1977) (an order directing the turnover of funds to a receiver is not a final order).

---

**8.** In *McNeal v. Habib, supra,* we reviewed the propriety of the protective order there as part of our review of the final disposition of the case.

**9.** In *Fireman's Fund Ins. Co. v. Myers,* 439 F.2d 834 (3d Cir. 1971), the circuit court ruled that an order requiring defendants to deposit funds with the plaintiff incident to application for a preliminary injunction was not appealable. The primary reason for the decision was that the order was subject to revision at any time. *Id.* at 838.

**10.** The circuit court in *Bell, supra,* 139 U.S.App.D.C. at 111, 430 F.2d at 484, expressed concern that the tenant's financial condition might render the obligation to pay accrued rent so burdensome that the litigation of meritorious defenses would be precluded. However, this view ignores a major purpose of the protective order. The tenant's failure to pay permits the court to presume that the defense to the landlord's suit for possession lacks merit and to strike the tenant's pleadings, entering judgment for the landlord. *See Davis v. Rental Assoc., Inc., supra,* —— – ——.

■ In determining the finality of an order, the pertinent needs of the judicial process must also be considered. *Republic Natural Gas Co. v. Oklahoma*, 334 U.S 62, 69, 68 S.Ct. 972, 977, 92 L.Ed. 1212 (1948); *District of Columbia v. Tschudin*, D.C.App., 390 A.2d 986, 988 (1978). The expense and delay of piecemeal litigation must be balanced with the need for a just adjudication of individual rights. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 70 S.Ct. 322, 94 L.Ed. 299 (1950). The protective order was originally devised to ameliorate the harm of excessive delay attendant to modern landlord-tenant disputes. To condone further delay by permitting appeal from this protective order where the court has weighed the appropriate factors would be an incontinent corruption of the summary process which the Landlord and Tenant Branch is intended to promote. *See Mendes v. Johnson*, D.C.App., 389 A.2d 781, 783 (1978).

■ The Supreme Court, however, has recognized limited exceptions to the finality rule in order to permit appeal. Where an order of the trial court directs immediate execution of judgment or delivery of property to a litigant which threatens irreparable injury, the order may be considered final. *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848); *see also* Wright, Miller & Cooper, *supra* § 3910 at 457. The order entered by the court in this case threatens no danger of loss or destruction to any property of the parties. *See Rexford v. Brunswick-Balke-Collender Co.*, 228 U.S. 339, 33 S.Ct. 515, 57 L.Ed. 864 (1913). This exception to the final order rule is too narrow to encompass the order entered here.[11]

Another exception is the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp., supra.* *Cohen* is particularly analogous to the issue before us because that case is the homeland of appealable prejudgment security orders.[12] *See* 9 Moore's Federal Practice ¶ 110.13[5] at 170. *Cohen* dealt with a New Jersey law which required prejudgment security from certain plaintiffs in derivative shareholder actions. The Supreme Court permitted appeal by a plaintiff shareholder to decide the unresolved issue of whether a federal court was required to apply the state law. The protective order is a close kin to this prejudgment security order held appealable in *Cohen. See Cooks v. Fowler*, 141 U.S.App. D.C. 236, 241, 437 F.2d 669, 674 (1971). However, there are two crucial differences between the prejudgment security order held appealable in *Cohen* and the protective order issued in this case.

First, prejudgment security is required of a plaintiff. On the other hand, the protective order requires the pretrial deposit by a defendant-tenant of an amount based on the previously agreed upon rent. As such, from the standpoint of a tenant, the order does not necessarily foreclose access to the court. Second, in *Cohen* the Supreme Court considered an unresolved question. In this case, the authority of a trial judge to enter a protective order is well settled. The true issue is the question of its amount, the determination of which is vested in the sound discretion of the court. Being a matter of discretion, this order is specifically distinguished by the Supreme Court from an appealable collateral order. "If the right were admitted or clear and the order involved only an exercise of discretion as to the amount of security, a matter the statute makes subject to reconsideration from time to time, appealability would present a different question." *Id.*, 337 U.S. at 547, 69

---

11. Wright, Miller & Cooper, *supra*, indicate that this hardship principle "remains 'an exceptional one,' apparently confined to orders that direct immediate execution of judgment or delivery of property to an opposing party in circumstances that threaten irreparable injury."

12. Several factors may justify the appealability of prejudgment security orders: the risk of collecting a judgment, the need to resolve a substantial question of law, a controversy over the power of the court to enter the order at issue, or the severe hardship such an order may cause. *See* Wright, Miller & Cooper, *supra* at 491–94.

S.Ct. at 1226. As was noted in *Cooks v. Fowler, supra,* 141 U.S.App.D.C. at 251, 459 F.2d at 1275, a protective order is just such an order because it is a "preliminary appraisal" the "provisional nature" of which "differs from the terminal character of a monetary verdict." By its discretionary nature, it is not a "separable order" entitled to immediate review under *Cohen, supra.* Cf. *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951); *see also Donlon Industries, Inc. v. Forte,* 402 F.2d 935 (2d Cir. 1968) ("Whether a court has power to require an undertaking is an issue of law, and an appellate decision will settle the matter not simply for the case in hand but for many others—as was notably true with the important issue in *Cohen.* In contrast, where the question is the propriety of an exercise of discretion in denying security, the factual variations are so numerous that a judgment on appeal can do little to establish meaningful standards"); *Phelps v. Burnham,* 327 F.2d 812, 814 (2d Cir. 1964).

Alternatively, appellants assert that the protective order is an appealable interlocutory order under D.C.Code 1973, § 11–721(a)(2)(C). That statute provides for appeal of orders "changing or affecting the possession of property." A protective order is not appealable under this statute for two reasons. First, the provision is inapplicable to the exchange of money since any danger of loss can be remedied at the conclusion of the litigation. Judicial control is retained. *See In re Parsons,* D.C.App., 328 A.2d 383 (1974).[13] Second, a protective order is designed to protect the status quo

between the landlord and tenant. The statute, however, is applicable only where an order would alter the status quo between the parties regarding "property." *Clark v. District Discount Co.,* D.C.Mun.App., 151 A.2d 198 (1959); *Laughlin v. Berens,* 75 U.S.App.D.C. 409, 128 F.2d 23 (1942). The protective order in this instance has preserved exactly the status existing prior to the controversy between the parties. The landlord is receiving the "old" rent and the tenants are in possession. "Congress by the statute intended to permit appeals only from interlocutory orders which if carried into effect would change or affect the actual possession of property as it existed immediately before the orders." *Id.* at 411, 120 F.2d at 25.[14]

Accordingly, the purported appeal is

*Dismissed.*

---

**13.** The predecessor of D.C.Code 1973, § 11–721(a)(2)(C), also permitted appeal from orders "dissolving writs of attachment and the like." *See* D.C.Code 1967, § 11–741(a)(2). Under that statute, orders affecting funds in the hands of a garnishee were appealable if they also affected the status quo. *See Bridgett v. Perpetual Bldg. Ass'n.,* D.C.Mun.App., 75 A.2d 780, 781–82 (1950). That section having been deleted from the present statute, orders regarding attachments are appealable only under the *Cohen* doctrine. *See, e. g., Eisen, supra,* 417 U.S. at 172, 94 S.Ct. at 2150.

**14.** We have indicated in the past that we may look to the analogous federal statutes for guid-

ance in this area. *Royal Credit Co. v. Mas Marques,* D.C.App., 222 A.2d 70, 72 (1966). In regard to the parallel federal statute, 28 U.S.C. § 1292(a)(2) (1976), Moore says that it "is confined to 'the ordinary equity receiver, or to some similar official of statutory authority' ... [a]nd to orders either ousting parties from possession of property or injuriously controlling the management and disposition of property.' " 7B Moore's Federal Practice, Judicial Code, 428.1–29. For an early example of an appropriate order for appeal, *see United States Elec. Lighting Co. v. Metropolitan Club,* 6 App.D.C. 536 (1895).