

Samuel Hershenstein, of New York City (Charles D. Francis, Samuel Hershenstein, and Solomon Kaufman, all of New York City, of counsel), for appellant.

J. Harlin O'Connell, of New York City, for appellee A. R. L. Dohme.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff, Dickinson, brought this suit to impress an equitable lien upon shares of stock of Petroleum Conversion Corporation, hereafter called "Petroleum," which were issued to the defendant Lloyd, and upon all increments thereto, and to compel the defendants to account for all shares of Petroleum acquired through or from Lloyd to the extent of the plaintiff's interest therein. At the close of the plaintiff's evidence, the trial judge granted the defendants' motion to dismiss for failure of proof.

The complaint alleges that the shares of stock standing in the name of Lloyd were issued under an agreement between Lloyd, the plaintiff Dickinson, and Petrole-

**DICKINSON v. RINKE et al.**

No. 41.

Circuit Court of Appeals, Second Circuit.

Jan. 19, 1943.

um; that one-half thereof belonged to the plaintiff and that, under a later amended agreement, all the stock in the name of Lloyd should be turned over to the plaintiff and be divided by the latter between himself and Lloyd as their interests should appear.

The trial judge dismissed the complaint upon the single finding of fact that "there was no agreement between the plaintiff * * * Dickinson and the defendant * * * Lloyd, pursuant to the terms of which * * * Dickinson was entitled to any interest whatsoever in any shares of stock of Petroleum * * * which may have been issued from time to time to or in the name of, * * * Lloyd."

The validity of the dismissal of the complaint depends on the correctness of the finding that there was no agreement between the plaintiff and Lloyd giving the former an interest in the stock, and we think that the evidence required a finding that the plaintiff had an interest. It is because of this erroneous finding of fact that we hold the judgment must be reversed.

The legal relations between the plaintiff, Dickinson, and the defendant, Lloyd, depend upon their activities in connection with three corporations, United States Gasoline Manufacturing Corporation, Knox Process Corporation and Petroleum Conversion Corporation. The first of the three was formed to exploit an oil cracking process invented by one William J. Knox. On May 22, 1923, the Gasoline Corporation made a contract with Lloyd to sell to him its letters patent and all its other assets. The contract also provided that Lloyd, having organized the Knox Process Corporation with an authorized capital stock of 600,000 shares of the par value of $3,-000,000, was to receive the 600,000 shares in consideration for the transfer of the letters patent and other assets. It provided that he should hold 241,605 shares for United States Gasoline stockholders. That number of shares was subject to future adjustment and was subsequently adjusted at 244,041 shares. The agreement further provided that he should deposit the balance of the 600,000 shares with United States Mortgage & Trust Company to be delivered by it to W. W. Briggs & Co., syndicate managers, upon completion of a syndicate to underwrite Knox bonds. Under the agreement, Lloyd was given the right to become interested with the syndicate managers and to share in stock or commissions in such ratio as he and they might agree. For services rendered in connection with the organization and financing of Knox, Lloyd became entitled to a substantial portion of 111,466 shares held for the syndicate managers.

On March 2, 1925, Dickinson and Lloyd made a contract under which Lloyd agreed that all stock to which he might be entitled for services rendered or to be rendered in connection with the organization and management of Knox should be turned over to Dickinson, that the latter, for services rendered, should be entitled to 20,600 shares and that the 20,600 shares, as well as the stock received by Lloyd, other than stock delivered to him in connection with subscription for or purchase of bonds or stock for cash, should be held by Dickinson, who should account to Lloyd for such shares, and the income thereof, as Lloyd, in Dickinson's sole judgment, should be entitled to. It was further agreed that any future stock or security of the corporation which Dickinson and Lloyd might severally or jointly receive, similar in nature or manner of receipt to the aforesaid stock, should likewise be delivered to Dickinson and pooled with him and divided in the same way.

In 1926, creditors of Knox holding mechanics' liens against the Texas plant of Knox secured a judgment against it for $174,620.56 in the courts of Texas. At a sale of the plant, held under this judgment, Lloyd bid in the plant on behalf of Dickinson for half the amount of the face of the judgment in cash (or $87,310.28) and half in stock of Knox or of any corporation which might be formed to acquire the plant. Likewise, during the year 1926 mortgage foreclosure proceedings were had by the trustee for the bondholders of Knox upon its patents and 93 acres of land adjoining its Texas plant. These mortgage assets were bought in at foreclosure sales by one Rinke on behalf of the bondholders of Knox and certain agency subscribers.

In December, 1926, Petroleum Conversion Corporation was organized with an authorized capital stock of 1,200,000 shares of the par value of $5 each. It is apparent from the proof that Petroleum was considered by the parties to be in effect a reorganization of Knox. Its entire capital stock was to be issued as follows:

(1) 590,400 shares to Arthur W. Rinke as agent for Rinke Agency subscribers and

as agent for the Protective Committee of Knox bondholders.

(2) 140,000 shares to F. B. Lloyd as Albert G. Dickinson's designee, and after issue to be returned to Petroleum to constitute a treasury asset.

(3) The balance of 469,600 shares to Albert G. Dickinson or his designees.

Item (1), supra, was issued against the transfer by Rinke of the patents and the 93 acres of land adjoining the Texas plant of Knox. Items (2) and (3) were issued to Lloyd in return for conveyances by Dickinson and his wife of the Texas plant which Dickinson had purchased as hereinbefore described.

Of the 590,400 shares, 350,400 were issued to the Knox bondholders at the rate of 400 shares for each $1,000 par value of bonds, and 240,000 shares were issued to Rinke as agent for the Rinke Agency subscribers, on the basis of two shares for each five dollars subscribed. There were six Rinke Agency subscription agreements, of which the first four authorized Rinke to invest the sums subscribed in Knox stock, and the latter two, in Petroleum stock. The 140,000 shares issued to Frank B. Lloyd were sold by him for the account of Petroleum, according to the arrangement authorized by corporate resolution.

No question is raised as to the propriety of the disposition of the 590,400 shares or the 140,000 shares of Petroleum. The dispute here is over the balance of 469,600 shares. Of these shares, 244,041 were held by Lloyd for stockholders of the United States Gasoline Corporation, evidently in place of a like amount of Knox stock provided to be so held by the agreement between Lloyd and the gasoline corporation of May 22, 1923. These shares are now on deposit with the Clerk of the United States District Court. There is doubt as to whether some of these 244,041 shares may not be subject to Dickinson's claims because of Lloyd's purchase of the rights of United States Gasoline stockholders therein, or for other reasons. Most of the remaining 225,559 shares seem to have been sold by Lloyd to other parties, but some were found in Lloyd's safe deposit box at the Marine Midland Trust Company and are likewise the subject of this suit.

The trial judge dismissed the complaint on the ground that there was no evidence to sustain the claim that there was any agreement between Dickinson and Lloyd in relation to Petroleum stock. The court reached this conclusion principally because Dickinson, at one point in his examination, said that the contract of March 3, 1925 (Exch. 2) was: "The only agreement we had," and in reply to the question: "Q. That you ever had?", answered: "A. Ever had." But he later was asked by the court:

"When you say that is the only agreement, do you mean that is the only written agreement?"

"The Witness: That is what I mean."

He also said: "We had many meetings and talks; what was advisable to do under certain circumstances. I had other dealings, etc.; * * *"

The claim that Dickinson had no interest in any part of the stock of Petroleum issued against the plant which he had conveyed to it would seem to be answered, not only by the form of the transaction itself as expressed in the resolutions under which the stock was voted by the directors of Petroleum, but also by letters from Lloyd and Rinke to Dickinson. On October 4, 1926, Lloyd wrote Dickinson a letter about the organization of Petroleum in which he mentioned the necessity of taking care of United States Gasoline stockholders, of salesmen who had earned commissions, of the Committee for the Knox Bondholders, and of other persons, and said: "Then there is stock to go to persons who advanced money in the early stages to cover the expenses. I figure that this will leave for you and for me on the deal alone anywhere from $600,000. to $700,000. par."

On October 18, 1928, Rinke wrote to Dickinson a letter in which he said that about 72,000 shares would be finally available for division, in addition to "any equities that may be worked out by buying in U. S. Gasoline stock and/or in connection with creditors stock." He added: "I deem it much better to treat these separately and in the meanwhile reach a definite conclusion on the stock that you two are entitled to for the efforts, financing, etc. during the period from the days of Knox Process down to the present time."

On January 21, 1928, Lloyd again wrote Dickinson, referring to the latter's "share in the partnership," that "at a minimum there will be left over for you and me 130,000 shares." Lloyd added:

"As there are about 244,000 shares held by me on an estimate for the gas fellows alone, it is quite clear that out of this

amount, there is possible a very large recovery.

"My mind, therefore at the present moment is that I have cashable, returnable value right now for you and me within a very short time, providing the proper effort is put back of it, of over $800,000, without consideration of our other interest or equities, but I am doing all the work."

The letter of Lloyd to Dickinson on December 7, 1926, in which Lloyd informed the latter that 469,600 shares were to be issued "in your own name, or in the names of such persons as you may designate," would seem to negative the much later letter written by Dickinson to Rinke on December 21, 1936, in which he denied knowledge that 609,600 shares of stock had been voted to him.

■ From the foregoing it seems clear that there was an agreement between Dickinson and Lloyd for the division of promotion stock earned in the Knox-Petroleum enterprise. The conduct and letters of the parties and the resolution authorizing the issuance of the stock bear this out, and also indicate an understanding that the contract of March 2, 1925, which we have previously described, not only covered Knox stock, but anything fairly related to the purposes and subject-matter specified in the contract.

It seems improbable that the parties to the original agreement would have intended to abandon their common purpose of exploiting the Knox patents merely because, as an incident to financing the project, it became necessary to reorganize the corporation that Lloyd had formed for their enterprise. Moreover, even though the contract of March 2, 1925, be regarded as insufficient in itself to cover in terms issues of Petroleum stock, the conduct and correspondence of the parties requires the inference that the contract was subsequently modified so as to embrace the transactions in Petroleum stock which we have described and that Petroleum should be treated as a reorganized corporation identical for practical purposes with Knox.

The original agreement of March 2, 1925, specifically left open the proportion in which the promotion stock was to be divided. Rinke's letter of October 18, 1928, which, he testified, Lloyd authorized him to send, indicates that Lloyd contemplated an even division of the promotion profits. While the trial judge was not disposed to credit this testimony, it was reenforced by Lloyd's letter to Dickinson of January 21, 1928, in which he referred to their "partnership" and apparently treated their interests as equal. Of course, Dickinson's pleading limits his claim to no more than half the stock.

■ Dickinson's complaint was dismissed at the close of his case upon what seems to us a clear misapprehension of the facts. Therefore the judgment must be reversed. Upon a new trial, both the defendants who have appeared and Lloyd, should there be an appearance on his behalf, will have the right to introduce evidence to negative plaintiff's claim. We go no farther now than to hold that the plaintiff at the close of his case established a right as against Lloyd to one-half of their promotion receipts, which the latter realized or had within his control. It is entirely possible that this right may be defeated or diminished upon a new trial.

■ It is impossible to determine from the evidence before us what, if any, part of the 244,041 shares of stock now in the hands of the Clerk of the District Court, or what portion of the stock held by the Marine Midland Trust Company, is property of the partnership, and what part is subject to the claims of third persons. This will ultimately have to be determined upon an accounting, should the case proceed that far on a new trial. The Lloyd correspondence we have set forth indicates that the plaintiff does have an interest. This is sufficient to require a reversal of the judgment and the granting of a new trial, upon which an accounting may be had.

Judgment reversed.