## DICKINSON v. MULLIGAN et al.

United States Court of Appeals
Second Circuit.
March 31, 1949.

Solomon Kaufman, of New York City, for appellant Dickinson.

James A. Vaughan, of New York City, for appellees E. Lewis Burnham and others, for the motion.

Alexander Kahan, of New York City, opposed.

Before L. HAND, SWAN and FRANK, Circuit Judges.

L. HAND, Chief Judge.

The appellant, Dickinson, and the appellees, Burnham and others, constituting the "Rinke Agency Subscribers," move to dismiss the appeal of the Petroleum Conversion Corporation from a judgment of the district court entered August third, 1948. The chief question is whether the corporation could have appealed from an earlier judgment, entered on April tenth, 1947, which dismissed a counterclaim filed by it after it had been allowed to intervene in the action; or whether it could appeal only from the judgment of 1948. Other questions, relating to the formal regularity of the appeal and to an extension of the time within which to file the record and brief, we reserve for the moment. Some outline of the action and what has gone before is necessary to an understanding of the motion. Dickinson sued Lloyd and others to impress a lien upon certain shares of the Petroleum Conversion Corporation, not then a party to the action; the district judge dismissed the complaint, and we reversed the judgment on January nineteenth, 1943.[1] Our opinion sufficiently states the controversy as it was at that time. On December third, 1943, the Petroleum Conversion Corporation was allowed to intervene by consent, and it filed a counterclaim in which it demanded the cancellation of a large number of its shares, on the ground that they had been fraudulently issued, and the recovery of $87,-310.28 from Dickinson and Lloyd, alleged to have been unlawful profits, obtained while acting as fiduciaries. On the same day Burnham and Vaughan were also allowed to intervene upon behalf of themselves and all other subscribers to a fund, known as the "Rinke Agency Subscribers," and to file a counterclaim demanding recovery from Dickinson and Lloyd of the same amount as the Petroleum Conversion Corporation claimed in its counterclaim.

The cause was tried a second time in 1944 and 1945, and, after long delay, an interlocutory judgment was finally entered on April tenth, 1947, as follows:

(1) Dismissing the complaint of Dickinson in toto;

(2) Declaring that the Petroleum Conversion Corporation had no right to 244,041 shares of its stock, then in possession of the court, and directing it to issue new certificates for those shares to the shareholders of another corporation, but that any shares not so distributed should be transferred to others as might be later decreed;

(3) Declaring that of 20,796 shares of its stock in possession of Lloyd's administrator, 8,200 should be delivered to the Petroleum Conversion Corporation, but that its claim to the remaining 12,596 shares be dismissed;

(4) Dismissing its claim for a rescission of a contract between itself and the plaintiff and his son;

(5) Dismissing its claim against Dickinson and Lloyd for the sum of $87,310.28;

[1] Dickinson v. Rinke, 2 Cir., 132 F.2d 805.

(6) Dismissing the claims of Lloyd's administrator altogether;

(7) Granting recovery of $174,620.56 with interest against Dickinson and Lloyd's administrator in favor of the "Rinke Agency Subscribers," and providing a concourse of all these, by which their several claims could be liquidated and the amounts ascertained to which each was entitled out of the sum mentioned.

On August third, 1948, after appropriate hearings, the district court entered a final judgment, fixing the several claims of all the "Rinke Agency Subscribers" who had proved their claims, and barring the claims of those who had not. Thus, it appears that the judgment of April tenth, 1947, finally disposed of the counterclaim of the Petroleum Conversion Corporation, as well as of any claim against that corporation by any of the parties; there remained, so far as that corporation was concerned, only the issue of those of its shares to others which the judgment directed—merely ministerial acts on any theory. That judgment was not final, however, as to the "Rinke Agency Subscribers," and became so only by the judgment entered on August third, 1948.

Had the petition of the Petroleum Conversion Corporation to intervene been denied, the denial would have been appealable, because in that event the petitioner would not have been "at liberty to assert and protect" its interests "in some more appropriate proceeding."[2] If so, it is not easy to understand why a party who has been allowed to intervene, should not be allowed an immediate appeal from a judgment dismissing his claim after a trial. The petition of intervention must within its own four corners disclose the basis of the claim, and the merits so disclosed will determine the right to intervene; there would appear to be no more reason to accelerate the right to appeal when the facts which it alleges, if true, do not justify the claim in law, than when, though the allegations are enough, they turn out to be false. On the other hand it is true that the whole nexus, or nidus, of facts out of which all the disputes and claims arose were not disposed of by the judgment of April tenth, 1947. True, that decree did decide that Dickinson and Lloyd owed the "Rinke Agency Subscribers" about $175,000 and that was a definitive decision; but it did not decide who was to participate in that limited award. That required another complicated proceeding in which over seventy claims were tried out and liquidated, and at the end of which all claimants were barred who had not appeared. That was in no sense a ministerial implementation of the judgment of April tenth, 1947.

■ In the view of all members of the court, as it is now constituted, this should make no difference for the whole counterclaim of the Petroleum Conversion Corporation had been finally disposed of on April tenth, 1947; and as to it the action was at an end as much as though it had been denied the right to intervene at all; indeed, the judgment was more final, so to say, because, unlike the denial of a petition to intervene, it was a bar to any effort to relitigate the claims determined. On the other hand, we cannot find any tenable distinction between the situation at bar and that which was before the court in Clark v. Taylor,[3] where we dismissed the appeal. It is true that the interlocutory judgment in that case had not decided anything as between the plaintiff and Taylor, the president of the A. S. C. A. P.; in which regard it was different from the judgment of April tenth, 1947, which did decide that Dickinson and Lloyd were liable to the "Rinke Agency Subscribers," and what was the limit of that liability. But we do not understand that the majority in Clark v. Taylor, supra, went upon any such distinction; on the contrary they regarded the "transaction," the "occurrence" as a whole, as the controversy, not the series of mutual rights and liabilities which had arisen out of it; and they held that until all these had been determined, no appeal lay, however finally any part of those rights and liabilities might be disposed of. It was only

2 Brotherhood of Railroad Trainmen v. Baltimore & Ohio R. Co., 331 U.S. 519, 524, 67 S.Ct. 1387, 1390, 91 L.Ed. 1646; Missouri-Kansas Pipe Line Co. v. United States, 312 U.S. 502, 508, 665, 61 S.Ct. 666, 85 L.Ed. 975.

3 2 Cir., 163 F.2d 940.

in case "transactions" or "occurrences" wholly disconnected were coupled, as the Rules permitted, that separate appeals could be taken. That case was decided only after the greatest deliberation, and the opinions then rendered contain all that can be said in support of either view. It appears to all three of us in the present court most undesirable to repudiate a precedent so established. In a final court of varying composition it might be asking too much that the first decision should become an authoritative precedent against the convictions of the other members, but we are not in that predicament. Dickinson and the "Rinke Agency Subscribers" may be able to secure a review by certiorari in the Supreme Court; and, if they fail, it is either because that court believes that the first decision was right, or because a solution of the issue is not of enough importance to demand its intervention. In either event we ought to be content, as we are, to sink our differences, and yield to the precedent, whatever our confidence in our conclusion. We shall therefore deny the motion, so far as it depends upon the argument that the judgment of April tenth, 1947, was final as to the Petroleum Conversion Corporation, and that by its failure then to appeal it lost any right of review.

The formal defects of the appeal need not detain us long. The Petroleum Conversion Corporation was adjudicated a bankrupt in the District of Delaware on August eighth, 1948, and one, Duffy, was appointed its temporary receiver. On September first, 1948, a notice of appeal was filed in the office of the clerk of the Southern District of New York, signed by the attorney before bankruptcy of the Petroleum Conversion Corporation. This notice purported to ask a review of the provisions of the judgment of August third, 1948, which dismissed the counterclaim of the Petroleum Conversion Corporation; but there were no such provisions in that judgment; they were in the judgment of April tenth, 1947. Perhaps the appellant thought that the judgment of August third, 1948, reaffirmed the earlier judgment; but at any rate the intent was perfectly manifest and that must control. The notice of appeal described Duffy, the temporary receiver, as the appellant, but declared that he was appealing in behalf of the Petroleum Conversion Corporation. Nothing further was done until January nineteenth, 1949, when at the request of Duffy, who had by then become the trustee, the referee called a meeting of creditors in Wilmington for February fourth to consider whether the appeal should be prosecuted by the trustee. The trustee recommended against this course, and, since at the creditors' meeting no one objected to his decision, the referee approved the recommendation. However, he also approved another recommendation of the trustee: i. e., that the appeal might be prosecuted by individual creditors at their own expense, and an order to that effect was entered on February ninth. In accordance with this the referee on the same day passed a second order, allowing four named creditors to prosecute the appeal on behalf of the Petroleum Conversion Corporation and of its trustee, without cost to the bankrupt estate.

A bankrupt even after adjudication may commence a suit in his name before the appointment of a trustee,[4] although the trustee may refuse to prosecute it after he has been appointed. The same must be true of an appeal, which is akin to a suit in another court, and used to be so regarded, even formally. Since the Petroleum Conversion Corporation, though bankrupt, could take the appeal, as a step quite outside the bankruptcy proceeding, it was free to be represented by an attorney of its choice. Moreover, it was within the power of the bankruptcy court to allow the four creditors at their own cost to prosecute the appeal as a possible asset of the estate. The appellant must post the necessary bond and otherwise conform to the rules, but the motions to dismiss the appeal will be denied.

---

[4] Johnson v. Collier, 222 U.S. 538, 32 S.Ct. 104, 56 L.Ed. 306; Danciger v. Smith, 276 U.S. 542, 48 S.Ct. 344, 72 L. Ed. 691; Meyer v. Fleming, 327 U.S. 161, 165-168, 66 S.Ct. 382, 90 L.Ed. 595; Paradise v. Vogtlandische Maschinen-Fabrik, 3 Cir., 99 F.2d 53.

742

The motion to be allowed four months within which to perfect the appeal will also be granted, dating from April first, 1949. The appeal can under no circumstances be heard at the present term of this court, and it is possible that the Supreme Court may grant certiorari. The litigation has already been so long delayed that this further delay cannot be of serious moment.

Motions to dismiss denied.

Motion to extend the time to file the record and brief extended to August first, 1949.