## DICKINSON v. PETROLEUM CONVERSION CORP.

No. 150. Argued December 5, 1949.—Decided January 16, 1950.

*Solomon Kaufman* and *Samuel Hershenstein* submitted on brief for petitioner.

*Alexander Kahan* argued the cause and filed a brief for respondent.

MR. JUSTICE JACKSON delivered the opinion of the Court.

The only issue presented by this case turns on the finality of a judgment for purposes of appeal, a subject on which the volume of judicial writing already is formidable. The Court of Appeals resolved against finality of the decree in question, saying, however, that it did so against the unanimous conviction of the court as constituted but in deference to a precedent established by a differently constituted court of the same Circuit. 173 F. 2d 738. Because of this intracircuit conflict, we made a limited grant of certiorari. 338 U. S. 811. That we cannot devise a form of words that will settle this recurrent problem seems certain; but in this case we agree with the convictions of the court below and reverse its judgment.

Something over a decade ago, Dickinson sued Lloyd, with whom he had been associated in promoting the Petroleum Conversion Corporation, along with others, to impress an equitable lien upon certain of the Corporation's shares then in Lloyd's name and possession. The District Court dismissed the complaint but the Court of Appeals reversed and directed a new trial. *Dickinson* v. *Rinke,* 132 F. 2d 805. Before retrial, Burnham and Vaughan, on behalf of themselves and such other stockholders as subscribed to a fund to aid the company or its predecessor in its embarrassment, were allowed to intervene. They set up a claim against both plaintiff Dickinson and defendant Lloyd that the stock involved in the controversy between them had been fraudulently issued and demanded that this stock be canceled. They

also sought recovery of $87,310.28 from them as unlawful profits secretly realized by breach of their fiduciary duty. Petroleum Conversion Corporation also intervened, making the same general allegations and demands for relief. The Corporation and the class of subscribers thus joined forces to get for one or the other substantially the same remedy against both Dickinson and Lloyd.

This triangular controversy was tried and a decree dated April 10, 1947, was entered. The issue here turns on the character of that decree. It recites twenty-three days of trial, the filing of a decision, opinion, findings of fact and conclusions of law, and it "ordered, adjudged and decreed" that all of the plaintiff Dickinson's claims be dismissed on the merits; that all of the defendant Lloyd's claims there pressed by his administrator be dismissed on the merits; that the class intervenors have judgment of $174,620.56 against both Dickinson and Lloyd's administrator, and that a concourse of all these subscribers be provided by which their several claims could be liquidated and the share of each in the recovery fixed; that Petroleum Conversion Corporation receive 8,200 shares of its stock in the hands of Lloyd's administrator but that its claim to 12,596 additional such shares and its claim to over 244,000 of its shares in possession of the court be dismissed; and Petroleum Conversion Corporation was directed to issue new shares to stockholders of another corporation, provided that, if any shares were not distributed for any reason, they be redeposited with the court subject to its further order with jurisdiction retained by the court to supervise the distribution of such shares. It dismissed all other claims of Petroleum Conversion Corporation.

From this decree Petroleum took no appeal. The District Court went ahead with hearings to determine claims of over seventy members of the class to share in the aggregate recovery against Dickinson and Lloyd's adminis-

trator. On August 3, 1948, the court signed a "final decree" which apportioned the recovery as between those claimants. It recited that "the issues reserved in the decree herein dated the 10th day of April, 1947, having been determined by the Court . . . the said decree is hereby made final." It made no decision as to any issue involving Petroleum and in no way changed the 1947 decree as to it. It also awarded costs which had not been settled in the earlier decree, but made no award against Petroleum.

Thereupon Petroleum's receiver in bankruptcy appealed from so much of this 1948 decree as dismissed the claims of Petroleum.[1] On motion to dismiss the appeal, the chief question and the only one we granted review, was whether the Corporation could have appealed from the 1947 decree, or whether it could only appeal from the 1948 decree.[2] In deciding this motion, the court said:

"In the view of all members of the court, as it is now constituted, this should make no difference for the whole counterclaim of the Petroleum Conversion Corporation had been finally disposed of on April tenth, 1947; and as to it the action was at an end as much as though it had been denied the right to intervene at all; indeed, the judgment was more final, so to say, because, unlike the denial of a petition to intervene, it was a bar to any effort to relitigate the claims determined." 173 F. 2d at 740.

But because it could find no basis for distinguishing *Clark* v. *Taylor*, 163 F. 2d 940, in which a differently composed

---

[1] As we have already indicated, however, the 1948 decree did not dismiss or decide any of Petroleum's claims except insofar as it may be construed to finalize the 1947 decree.

[2] If the 1947 decree was final as to Petroleum for purposes of appeal, Petroleum could not appeal from the 1948 decree. *Hill* v. *Chicago & Evanston R. Co.*, 140 U. S. 52.

court in the same Circuit had sustained what appears to be a contrary position, it held the earlier order not appealable and hence no bar to the present appeal. 173 F. 2d at 740–741.

Half a century ago this Court lamented, "Probably no question of equity practice has been the subject of more frequent discussion in this court than the finality of decrees. . . . The cases, it must be conceded, are not altogether harmonious." *McGourkey* v. *Toledo & Ohio Cent. R. Co.,* 146 U. S. 536, 544–45. This lamentation is equally fitting to describe the intervening struggle of the courts; sometimes to devise a formula that will encompass all situations and at other times to take hardship cases out from under the rigidity of previous declarations; sometimes choosing one and sometimes another of the considerations that always compete in the question of appealability, the most important of which are the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.[3]

The liberalization of our practice to allow more issues and parties to be joined in one action and to expand the privilege of intervention by those not originally parties has increased the danger of hardship and denial of justice through delay if each issue must await the determination of all issues as to all parties before a final judgment can be had. In recognition of this difficulty, present Rule

---

[3] The cases and the policy considerations underlying them are collected and discussed in 3 Moore's Federal Practice, 1948 Supp., 172–187; Moore's Commentary on the U. S. Judicial Code, 495–501, 507–518 (1949); Note to Rule 54 (b), Advisory Committee's Report of Proposed Amendments to Rules of Civil Procedure (1946); Reformulation of the "Final Decision" Rule—Proposed Amendment to Rule 54 (b), 56 Yale L. J. 141; The Final Judgment Rule in the Federal Courts, 47 Col. L. Rev. 239; Federal Rule 54 (b) and the Final Judgment Rule, 47 Mich. L. Rev. 233.

54 (b), Federal Rules of Civil Procedure, was promulgated. It provides:

> "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, crossclaim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."

The obvious purpose of this section, as indicated by the notes of the advisory committee, is to reduce as far as possible the uncertainty and the hazard assumed by a litigant who either does or does not appeal from a judgment of the character we have here.[4] It provides an opportunity for litigants to obtain from the District Court a clear statement of what that court is intending with reference to finality, and if such a direction is denied, the litigant can at least protect himself accordingly.

But this new rule—which became effective on March 19, 1948—was not in effect at the time of the 1947 decree in this case and it would not be appropriate to attempt to determine its effect on cases of this kind beyond observing that it may do much to prevent them from coming here. We will not, therefore, try to lay down rules to embrace any case but this.

---

[4] Note to Rule 54 (b), Advisory Committee's Report of Proposed Amendment to Rules of Civil Procedure (1946) 70–72. See also authorities cited in n. 3, *supra*.

We have held that an order denying intervention to a person having an absolute right to intervene is final and appealable. *Brotherhood of Railroad Trainmen* v. *Baltimore & Ohio R. Co.,* 331 U. S. 519; *Missouri-Kansas Pipe Line Co.* v. *United States,* 312 U. S. 502. When the application for intervention is denied, the would-be intervenor is foreclosed from further action in the case and its proceedings cannot affect him nor can he affect them. As the court below observed, it is hard to see why the exclusion of an intervenor from the case should be less final when it is based upon the evidence than when it is based upon pleadings. In either case, the lawsuit is all over so far as the intervenor is concerned.

When its claims were dismissed by the decree of April 1947, any grievance that Petroleum Conversion Corporation had was fully matured.[5] At that point Petroleum

---

[5] While it should make no difference as to the law that governs finality, it is fair to the law and to the court to dispel the impression that this decision makes the creditors of Petroleum Conversion Corporation "victims of this jungle of doubt," or victims of any kind, or that they are in this predicament from a "failure to guess right on a legal question." This calls for some further detail irrelevant to the issue of law.

The decree of April 10, 1947, awards the recovery of $176,245.24, with interest from 1926, to the Rinke Agency Subscribers, as their several shares might be determined. These were the persons who in 1926 put up the funds, amounting to some $600,000, out of which Dickinson and Lloyd withdrew secret profits in breach of their fiduciary duty to those subscribers. The Petroleum Conversion Corporation had not been organized at the time of this breach of faith and its claim was derived from its predecessor corporation for the financial relief of which this fund was subscribed.

It will thus be seen that Petroleum Conversion's claims as to the existence of fraud and secret illegal profits were not based upon any depletion of its own treasury, but of a separate fund subscribed, of which it might ultimately be a beneficiary. The repayment of the secret profits was awarded to those who had put up the money of which they had been defrauded and was not awarded to the Corporation. The decree which it now wants to review was entered

was out of the case. The decree was not tentative, informal nor incomplete as to it; and the case was concluded and closed as to its counterclaims. The court's reservation of jurisdiction to supervise the distribution

on motion of Petroleum's own attorney. Its interests and those of the intervening subscriber class were handled by the same attorney at the trial. A single brief and proposed findings of fact and conclusion of law were jointly submitted by Petroleum and other intervenors to the trial court, which left it to the court, if recovery were allowed, whether the judgment should be in favor of the Corporation or the subscribers. The court decided the recovery belonged to the subscribers. It was deliberately decided not to appeal the court's dismissal of Petroleum's claims under these circumstances.

The attorney now seeking to prosecute an appeal sought in March of 1948 to intervene in District Court on behalf of preferred stockholders. He attacked this cooperation between counsel for the two intervenors and particularly the failure of counsel to appeal the April 10, 1947 decree. As to this charge, the trial judge said: "In so far as their petition for leave to intervene is based on the charge that the corporation's [Petroleum Conversion Corporation] rights in respect to the $176,000 claim have not been fully and honestly presented, the history of this litigation, as set forth in the Court's opinion of October, 1946, and the trial record show that any such charge is baseless." It was in that connection that the trial court suggested that "In my opinion it was not a final decree and was not appealable, at least in so far as it involved the claim for $176,000." But the time to appeal was then long past and failure to appeal was not influenced by this statement, nor, so far as appears, by any bewilderment as to the finality of the decree. No appeal was prosecuted because counsel who had fought and won the principal issues in the case thought justice had been done by the decree as it stood.

After the final decree, counsel, having been thus criticized, filed on September 1, 1948, a notice of appeal from the final decree. This was on behalf of the trustee for Petroleum, which meanwhile was adjudged bankrupt.

But the trustee at once laid the inadvisability of the appeal before the bankruptcy court. He advised the court that "The Trustee is satisfied from his investigation that Judge Leibell had sufficient evidence and supporting authorities for finding as he did and believes that an appeal to the Court of Appeals would probably be fruitless." He pointed out that the attorney who now proposes to prosecute the

of the shares of stock and the provision for further proceedings to determine the individual shares in the aggregate recovery allowed did not in any manner affect Petroleum's rights. What the court reserved was essentially supervisory jurisdiction over the distribution among the class of the recovery awarded the intervenors as the class' representatives. The only questions were, so to speak, internal to the intervening interest. Petroleum no longer had any concern with these questions and, however they were resolved, Petroleum could not possibly have been affected. The court obviously selected with deliberation the issues it would close by the decree and those it would reserve for future decision. If it had any purpose to leave open any issue concerning Petroleum's

---

appeal had objected to its abandonment, but reported that "The Trustee accordingly proposes not to prosecute said appeal and petitions the approval of this court." Notice was given to all creditors of the Corporation and, "no creditors having objected to the recommendations of the trustee," it was approved. It was provided, however, that, if any creditor desired to prosecute the appeal, without liability upon the bankrupt's estate for costs or expenses unless the appeal was successful, he might do so under § 64 (a) (1) of the Bankruptcy Act. 60 Stat. 330, 11 U. S. C. § 104 (a) (1).

Thereafter, permission so to prosecute this appeal was granted. Counsel has also moved to amend both the notice of appeal and the pleadings, without which he claims the appeal might be irreparably prejudiced. What new issues he would raise we cannot learn from the record before us.

Some of us are unable to see that this case exemplifies any such injustice in the rule of finality that the practice should be remolded to allow an appeal from either decree in order to save this appellant.

The judgment required repayment of money to seventy and more claimants who were defrauded of it in 1926. The purpose of the appellant is to divert this same money recovery through the trusteeship of a bankrupt corporation, where it would be subject to renewed litigation as to how it shall be distributed and to multiple fees. If the rule of finality we apply means that amends for a 1926 fraud shall be concluded as early as 1950, we do not think that condemns the rule as unjust.

contentions, or affecting its interests, half a line in the decree would have done so. But that half-line was not written.

We hold the decree of April 10, 1947, to have been a final one as to Petroleum [6] and one from which it could have appealed and that its failure to appeal therefrom forfeits its right of review. Its attempt to review the earlier decree by appealing from the later one is ineffective, and its appeal should be dismissed.

*Reversed.*

Mr. Justice Douglas took no part in the consideration or decision of this case.

Mr. Justice Black, dissenting.

The right to appeal a judgment has long been said to depend on whether it is "final." This is a simple question where a court decides all issues simultaneously and enters a final order putting an end to a controversy. But when an order apparently leaves some question or claims open for further court action at a later date, doubts as to finality arise. See, *e. g., Hohorst* v. *Hamburg-American Packet Co.,* 148 U. S. 262. Finality and ap-

---

[6] The parties have not tendered to this Court, and we did not take by certiorari, any issue as to any appeal by Dickinson. What its fate will be if such an appeal is pending we do not know and the record is not compiled to inform us of its merits. Dickinson, we only know, was a party to the original action; not as Petroleum, an intervenor. The last decree of the court, we know too, awarded costs against him which the former decree did not. And it awarded against him money judgments for specific amounts in favor of particular claimants, whereas the earlier decree adjudged only a general liability to a class. The Court of Appeals will be able to deal with any contentions that the Dickinson appeal should be dismissed, and until it has acted, we draw no inferences from obviously incomplete information on unlitigated issues.

pealability have provided judges, lawyers, and commentators with a perpetual subject for debate.[1]   But litigants have too often been thrown out of court because their lawyers failed to guess that an order would be held "final" by an appellate court.   The creditors of Petroleum Conversion Corporation, who are prosecuting this action for respondent here, are not the first victims of this jungle of doubt.[2]   I also doubt that they will be the last victims, despite the Court's hope that the new Rule 54 (b) has charted a clear route through the jungle.

I see no practical reason why the Court of Appeals should not have been free to review the respondent's challenge to the 1948 decree without regard to appealability of the 1947 decree.   A rational system of jurisprudence should not attach inexorable consequences to failure to guess right on a legal question for the solution of which neither statutes nor court opinions have provided even a reasonably certain guide.   Where, as here, arguments as to which of two decrees is "final" may be considered relatively even, an appellate court should be free to find "finality" in either decree appealed from.   Under such a rule a court could consider the many circumstances relevant to orderly appellate administration without penalizing litigants merely because it finds that an earlier

---

[1] See, *e. g.*, Judge Frank, dissenting in *Clark* v. *Taylor*, 163 F. 2d 940, 944–953.   See also Crick, *The Final Judgment As a Basis for Appeal*, 41 Yale L. J. 539; Note, *Finality of Judgments In Appeals From Federal District Courts*, 49 Yale L. J. 1476.

[2] The corporation was adjudicated bankrupt in August 1948.   On September 1, 1948, the temporary receiver (later appointed trustee) filed an appeal from the 1948 decree.   Subsequently he refused to prosecute the appeal, but the bankruptcy court accepted his recommendation that creditors be allowed to do so without expense to the estate.   By today's decision the creditors of the bankrupt corporation, who were not represented in the trial below, are deprived of their only opportunity to appeal.

decree falls on the "finality" side of what remains a twilight zone. *Cf. Davis* v. *Department of Labor,* 317 U. S. 249. See also dissent in *Morgantown* v. *Royal Ins. Co.,* 337 U. S. 254, 263–264.

Even if the old "either-or" rule is applied as to appealability of the 1947 and 1948 decrees here, it seems to me that weightier reasons support holding the latter final. The judge who tried the case and rendered both decrees attributed finality to the decree of 1948 and not to that of 1947. He termed the 1947 order a "Decree," the 1948 order a "Final Decree." He specifically provided in the 1947 decree "That the taxation of costs in this case and the entry of judgment therefor, be deferred until the entry of judgment in respect to the matters hereinabove reserved for the future determination of this Court." At his order, both Petroleum and Dickinson received notice of subsequent hearings. Four months before the final 1948 decree the trial judge in a memorandum opinion referred to the 1947 decree as "interlocutory." Answering contentions that respondent here should have appealed from the 1947 decree, he stated: "In my opinion it was not a final decree and was not appealable, at least in so far as it involved the claim for $176,000." And in the 1948 decree the trial judge for the first time declared that the 1947 decree "is hereby made final." [3] The creditors prosecuting this appeal for respondent should not be deprived of an opportunity to appeal from the 1948 decree just because attorneys for the corporation failed to appeal from a former decree which the trial

---

[3] Paragraph 3 of the 1948 decree reads:

"That the issues reserved in the decree herein dated the 10th day of April, 1947, having been determined by the Court in its decision and opinion and its Findings of Fact and Conclusions of Law filed herein dated the 24th day of July, 1948, the said decree is hereby made final."

judge himself seems to have considered interlocutory and nonappealable.[4]

The holding that Petroleum's appeal from the 1948 judgment must be dismissed may well produce a strange consequence. The reason for dismissal urged here by petitioner Dickinson is that the 1947 decree was final; under his contention, that decree left nothing for the trial court to do except determine the shares of various "Rinke subscribers" in "the particular sum" found due to that class from Lloyd and Dickinson, and to assess costs and enter judgment. On this hypothesis the 1947 decree seems just as final on Dickinson's claims and liability as on Petroleum's. The 1947 litigation originated in charges of fraud made by Dickinson against Lloyd. Petroleum and persons designated as "Rinke subscribers" then intervened, charging fraud against both Dickinson and Lloyd. The 1947 decree rested on findings that the charges against Dickinson and Lloyd had been proven. The court concluded that the Rinke subscribers, and to some extent Petroleum, had been damaged by their fraud. Accordingly the court awarded partial relief to Petroleum on one of its claims, dismissing all its other claims. The court also fixed a particular amount for the Rinke subscribers as a group to recover from Dickinson and the Lloyd estate. That decree, here held final as to Petroleum, apparently had an identical degree of finality as to Dickinson: in addition to fixing the precise sum for which Dickinson and Lloyd were liable to Rinke subscribers as a group, it completely dismissed Dickinson's affirmative claims.[5] Yet

---

[4] The creditors have contended that the interests of the corporation were not adequately represented at the trial because the corporation attorney regarded it as immaterial whether the corporation or Rinke subscribers obtained the recovery.

[5] The possible distinctions between finality as to Dickinson and as to Petroleum, listed by the court in footnote 6 of its opinion, seem

Dickinson himself has appealed from the 1948 decree,[6] and ironically enough he is the only party here urging dismissal of Petroleum's appeal from the same decree.

So far as we know, Dickinson's appeal is still pending. With Petroleum out of the case by this Court's judgment, he should certainly not be left free to have his own appeal considered in the Court of Appeals. Permitting him to challenge the 1947 findings would result in appellate review of that decree without the presence of Petroleum, who was one of Dickinson's 1947 adversaries. If Dickinson can challenge the 1947 decree by appeal from the 1948 judgment, Petroleum should also be allowed to challenge it. And if neither can challenge it, the basic questions of fraud and liability are now beyond the reach of appellate review. I cannot join the Court in applying a rule of "finality" which attaches such consequences to the understandable failure of these parties to appeal from the 1947 decree.

---

unsubstantial. That Petroleum entered the cases as an intervenor is immaterial; having litigated its claims and being bound by the judgment, it is just as much a party as Dickinson. The 1948 decree could have awarded costs against Petroleum as easily as against Dickinson, since the 1947 decree expressly reserved the question of costs as to all parties. And the extent of Dickinson's liability, adjudicated in the 1947 decree, was in no way altered by the 1948 decree allocating recovery among the Rinke subscribers.

[6] Lloyd's Administrator is listed in the Court of Appeals opinion as "appellee-appellant."