815 F.2d 1425
 T & B SCOTTDALE CONTRACTORS, INC., Plaintiff-Appellant, Cross-Appellee,
v.
UNITED STATES of America, Defendant-Appellee,
Trust Company Bank, Intervenor-Appellee, Cross-Appellant,
Richard D. Ellenberg, Trustee in Bankruptcy of Rodger &
Rodger, Inc., Intervenor-Appellee.
In re RODGER & RODGER, INC., Debtor.
UNITED STATES of America, Plaintiff,
v.
RODGER & RODGER, INC., et al., Defendants.
 No. 85-8522.
 United States Court of Appeals,
Eleventh Circuit.
 May 4, 1987.
 
 A.L. Mullins, Jr., Atlanta, Ga., for appellant.
 Amy D. Levin, Asst. U.S. Atty., Atlanta, Ga., Glenn L. Archer, Jr., Asst. Atty. Gen., U.S. Dept. of Justice, Michael L. Paup, Roger M. Olsen, Wynette J. Jewett, John J. Boyle, Washington, D.C., for U.S.
 Richard D. Ellenberg, Atlanta, Ga., Trustee, pro se.
 C. David Hailey, Atlanta, Ga., for T & B Scottdale.
 Lawrence S. Burnat, Timothy C. Batten, Atlanta, Ga., for Trust Co.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before GODBOLD and VANCE, Circuit Judges, and SWYGERT,* Senior Circuit Judge.
 VANCE, Circuit Judge:
 
 
 1
 This case involves a dispute over the ownership of a bank account T & B Scottdale Contractors, Inc. (hereinafter "T & B Scottdale") opened in the name of its subcontractor, Rodger & Rodger, Inc. (hereinafter "R & R"), at Trust Company Bank (hereinafter "the bank"). R & R subsequently filed for bankruptcy. This appeal results from the district court's summary judgment that these funds became part of R & R's bankruptcy estate. T & B Scottdale, the bank, and the Internal Revenue Service each assert an interest in this account. This court declines this invitation to sort through their claims, however, because it is uncertain whether the district court's summary judgment is appealable as a final order. We remand so that the district court may clarify to what extent T & B Scottdale can pursue its claims in bankruptcy court. If the district court's order precludes T & B Scottdale from further asserting its interest in these funds, we suggest that certification under Fed.R.Civ.P. 54(b) may be appropriate.
 
 I.
 
 2
 The relevant facts are summarized as follows. In July 1982, T & B Scottdale entered into a contract with the City of Atlanta to build a water treatment project. The contract contemplated that minority subcontractors could purchase materials through joint checking accounts controlled by the contractor, T & B Scottdale.[1] R & R was a minority subcontractor who had been awarded the mechanical portion of the project. T & B Scottdale's working agreement with R & R provided that T & B Scottdale would "open a bank account in [R & R's] name for the sole purpose of paying for equipment...." The agreement further specified that T & B Scottdale would retain control of this account.
 
 
 3
 T & B Scottdale arranged to open such an account in R & R's name. The bank placed on file a "Certificate of Corporate Authority" and "Account Signature Card" which indicate that funds could be disbursed only with the signatures of both a representative of R & R and an officer of T & B Scottdale. Both the unsigned back of the Account Signature Card and a "General Account Agreement" purported to give the bank the right to charge the account for any indebtedness.[2]
 
 
 4
 The account functioned smoothly for over a year: R & R would order the equipment necessary to perform its work; R & R would then forward the invoices to T & B Scottdale, which would deposit sufficient funds into the account and sign a check; and finally, R & R would add the second signature and forward the check to the vendor. During the entire life of the account, only T & B Scottdale deposited money and received account statements.[3] No funds were ever disbursed to R & R.
 
 
 5
 On September 23 and October 4, 1983, T & B Scottdale deposited into the account funds totalling $135,264.89, the subject of the dispute in this case. On October 7, the Internal Revenue Service served a notice of levy against the account to satisfy R & R's unpaid federal income and social security taxes totalling $92,008.48. On October 14, after learning of this levy, T & B Scottdale instituted a wrongful levy action against the government.[4] T & B Scottdale claimed ownership of the account and sought to enjoin enforcement of the levy. The district court refused to grant an injunction, but directed the bank to deposit the $92,008.48 into the court registry.
 
 
 6
 After a second notice of levy to satisfy an additional $44,909.45 in unpaid taxes, the district court placed the remaining funds into the court registry. That same day, November 17, R & R filed for bankruptcy. On November 30 the bank itself moved to intervene in the wrongful levy action, claiming that R & R was indebted to the bank in the amount of $89,256 due on a demand note.[5] R & R also sought to intervene as debtor-in-possession. The government thereupon instituted an adversary proceeding in the bankruptcy court to determine the nature and extent of the competing claims upon the account. The district court withdrew the "reference of the adversary proceeding to the bankruptcy court" and consolidated the adversary proceeding with the wrongful levy action.
 
 
 7
 T & B Scottdale, the bank and the bankruptcy trustee each moved for summary judgment in the district court. T & B Scottdale contended that R & R had no interest in the account. Alternatively, T & B Scottdale claimed a surety's right of equitable subrogation, arguing that T & B Scottdale had acted, in essence, as surety for R & R's performance. T & B Scottdale further asserted that the funds in the account were held as a constructive trust for T & B Scottdale's benefit. The bank and the trustee, on the other hand, argued that the account belonged to R & R. The bank claimed the funds both as its security interest and as a setoff under the express language of the Account Signature Card and the General Account Agreement.[6] The government conceded that its rights in the account would depend on whether the funds were the property of the bankruptcy estate.
 
 
 8
 The district court rejected both T & B Scottdale's and the bank's motions for summary judgment. The district court granted the trustee's motion for summary judgment "solely as to its finding that the funds in question are part of R & R's estate in bankruptcy." The district court returned this action to the bankruptcy court "for its determination of the parties' interests, and distribution of the estate's assets." T & B Scottdale and the bank now appeal the district court's order granting the trustee's motion for summary judgment and denying their own respective motions for summary judgment.
 
 II.
 
 9
 The threshold question in this case is whether we have jurisdiction over the appeal. Our jurisdiction over appeals from the district court is governed by 28 U.S.C. Sec. 1291.[7] Under that statute appeals can only be taken from final orders. An appealable final order is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1365, 1368 (11th Cir.) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945) ), cert. denied, 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983).
 
 
 10
 A denial of summary judgment, by itself, does not preclude T & B Scottdale or the bank from pressing their respective claims at trial. It follows ineluctably that the district court's denial of summary judgment is not an appealable final order.
 
 
 11
 When a judge denies one party's motion for a summary judgment, he merely preserves the status quo in the case. He indicates only that the moving party has not presented a sufficient case to win outright at that point, i.e., he has failed to show the court that no genuine issue of material fact exists and that he is entitled to a judgment as a matter of law.... [B]y its very nature a denial of summary judgment cannot be conclusive.
 
 
 12
 In re Smith, 735 F.2d 459, 461 (11th Cir.1984); see also In re Emerald Oil Co., 694 F.2d 88, 89 (5th Cir.1982).
 
 
 13
 Similarly, that part of the district court's order granting the trustee's motion for summary judgment is also not a final order if T & B Scottdale is free to litigate before the bankruptcy court the merits of its equitable claims upon the account.[8] The effect of the district court's order, however, is uncertain. The district court held that "R & R has legal title to the account" but specifically left open the issue of whether "T & B [Scottdale] has some interest in the money." In arriving at this determination, the court appeared to disapprove of each of the theories--constructive trust, surety and equitable subordination--T & B Scottdale advanced to remove these funds from the bankruptcy estate. It is not clear whether T & B Scottdale may pursue these equitable claims in bankruptcy court, or whether the district court has relegated T & B Scottdale to the role of an unsecured creditor.
 
 
 14
 If the district court's order forecloses these equitable claims, the propriety of this appeal becomes a much closer question. On the one hand, the bankruptcy court must still determine who receives the disputed funds. Under these circumstances, the district court's order is not "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d at 1368. This is true regardless of whether the litigation in question is the entire bankruptcy proceeding or either of the two actions consolidated before the district court. On the other hand, if the litigation in question is viewed as the discrete controversy between T & B Scottdale and the trustee of whether the account should be included in the bankruptcy estate, the district court has indeed ruled on the merits, leaving only a judgment to be executed.
 
 
 15
 The district court must clarify the extent to which it has foreclosed T & B Scottdale's claims. We point out that the district court has the option to direct entry of judgment under Fed.R.Civ.P. 54(b). Of course, such a certification is not appropriate if T & B Scottdale is free to assert its equitable claims in bankruptcy court.
 
 
 16
 REMANDED.
 
 
 
 *
 Honorable Luther M. Swygert, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 Minority contractors might encounter difficulty obtaining surety bonds. The purpose of this arrangement was to make surety bonds unnecessary
 
 
 [2]
 The Account Signature Card incorporates the General Account Agreement by reference
 
 
 [3]
 T & B Scottdale avoided a service charge by representing to the bank that the account benefited T & B Scottdale, notwithstanding the fact that the account was held in the name of the subcontractor
 
 
 [4]
 T & B Scottdale first attempted unsuccessfully to transfer these funds into the contractor's own general account at the bank. The bank complied, but returned the money to R & R's account after an R & R officer protested
 
 
 [5]
 R & R had a relationship with the bank for several years. In 1981 R & R signed two security agreements granting the bank a security interest in R & R's existing and subsequently acquired accounts and contract rights. A financing statement was filed on April 23, 1981
 
 
 [6]
 The bank asserted that T & B Scottdale was estopped from claiming an interest in the account because it had misled the bank into believing that these funds belonged to R & R. The bank also took the position that its security interest arose prior to the government's tax liens
 
 
 [7]
 Section 1291 grants courts of appeals jurisdiction of appeals from all final decisions of a district court. Although the present case has been referred to as a "bankruptcy case," the only action in it has been that of the district court in ruling on the motions for summary judgment. There has been no decision by a bankruptcy judge since the adversary proceeding pending in the bankruptcy court was withdrawn and consolidated with the wrongful levy action in the district court. The applicability of 28 U.S.C. Sec. 1293 (current version at 28 U.S.C. Sec. 158(d)), the section governing jurisdiction over bankruptcy appeals at the time this case was filed, is unclear given that the only decision rendered so far has been that of a district court and exactly what issues that court resolved remain unclear. This question need not be resolved, however, because in this circuit the same standard of finality applies to appeals arising under either Sec. 1293 or Sec. 1291. See Matter of International Horizons, Inc., 689 F.2d 996, 1000 n. 6 (11th Cir.1982) ("final order" jurisprudence developed in the context of Sec. 1291 applies to Sec. 1293 appeals); In re Regency Woods Apartments, Ltd., 686 F.2d 899, 901 (11th Cir.1982) ("[s]ection 1293(b) incorporates the principle of finality as used in Fed.R.Civ.P. 54(a)")
 
 
 [8]
 This court is urged to find that the district court's order is appealable under exceptions to the final judgment rule. See Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964); Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Forgay v. Conrad, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848). There has been no showing that a "danger of denying justice by delay" brings this case within the Gillespie doctrine. Gillespie, 379 U.S. at 153, 85 S.Ct. at 311 (quoting Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 70 S.Ct. 322, 94 L.Ed. 299 (1950) ). See also CTI-Container Leasing Corp. v. Uiterwyk Corp., 685 F.2d 1284, 1287 (11th Cir.1982), cert. denied, 459 U.S. 1173, 103 S.Ct. 820, 74 L.Ed.2d 1017 (1983). Similarly, the record does not explain why prompt review is necessary to protect important interests or protect a party from irreparable injury. For this reason, neither the Cohen collateral order doctrine nor the Forgay-Conrad rule applies. See In re Charter Co., 778 F.2d 617, 622 (11th Cir.1985); In re Regency Woods Apartments, Ltd., 686 F.2d 899, 902 (11th Cir.1982)